UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEITH ROSE,                              )<br>                                                    )<br>    Plaintiff,                              )<br>                                                    )<br>v.                                                )<br>                                                    )<br>CITY OF ST. LOUIS, et al.          )<br>                                                    )<br>    Defendants.                          ) | Case No. 4:18-CV-1568<br><br>JURY TRIAL DEMANDED |

### **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND ALTERNATIVE MOTION TO STRIKE**

Defendants City of St. Louis and its police officers named in the complaint have moved to dismiss or strike all or part of the complaint. As more fully argued below, the complaint is an egregious breach of F.R.Civ.P. 8(a), as there is nothing short or plain about it. If the Court considers that dismissal for violation of Rule 8(a) is unwarranted, defendants submit that the prolix complaint and its exhibits defeat plaintiff's own cause, demonstrating that plaintiff fails to state a claim. Finally, defendants submit that in any event, certain paragraphs of the complaint should be stricken pursuant to F.R.Civ.P. 12(f).

### CLAIMS ALLEGED

Given the manner in which the complaint is framed, defendants find it difficult to summarize plaintiff's claims. As best defendants can discern, plaintiff seeks damages on account of various constitutional and state law torts allegedly inflicted by defendants.

In brief, plaintiff asserts 16 counts apparently arising out of an incident involving the police's use of pepper spray at a protest demonstration at the intersection of Washington Avenue and Tucker Boulevard in the City of St. Louis in September 2017.

**1.     The complaint [doc. 1] should be dismissed or stricken for failure to comply with F.R.Civ.P. 8, in that it is replete with tendentious, inflammatory, and immaterial allegations attacking the integrity of Missouri courts, injecting spurious issues to which defendants cannot**

**possibly frame a response, and including voluminous exhibits and references to other litigation without specifying wherein and how the exhibits reflect facts germane to plaintiff's claims.**

> A Complaint must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8(a) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought. Rule 10(b) requires that a party must state his claims in separately numbered paragraphs, each limited as far as practicable to a single set of circumstances. In other words, the complaint should not be overly wordy or repetitive. It should instead be limited to the 'who, what, when, and where' of the facts of plaintiff's claim or claims. [Perry, J., *Smith v. Republic Services,* 2017 U.S.Dist.LEXIS 147883 (E.D.Mo. 2017), aff'd, 739 Fed.Appx. 362 (8th Cir. 2018).]

Plaintiff's complaint is neither short nor plain. It commences with inflammatory rhetoric ill-suited for a complaint and continues in that vein for many paragraphs. In particular, the paragraphs casting aspersions on the verdict in *State v. Stockley,* are impertinent and perhaps scandalous, as implying some impropriety on the part of the judge rendering the verdict.

Although, as discussed below, defendants submit that the complaint as it stands fails to state a claim for relief when one finally reaches the alleged claims, the inclusion of the immaterial and impertinent allegations have imposed an unnecessary burden on defendants in seeking to understand the claims actually asserted, as distinct from plaintiff's dissatisfaction with the result of *State v. Stockley.* This unnecessary burden is prejudicial because it forces the defendants to try to guess at how much of the scattershot allegations actually pertain to plaintiff's claims against defendants, as opposed to pertaining to plaintiff's objections to the Missouri criminal justice system and policing in general. The burden on defendants is particularly clear in dealing with the inclusion of voluminous exhibits, such as the transcript of a preliminary injunction hearing in a parallel case.

Defendants find paragraphs 18-23, 25-26, 33-36, and 112-122 to be particularly troublesome. Indeed, in paragraphs 33-36, plaintiff appears to be alleging that defendants' supposed violation of a consent decree is an independent ground for relief. All of these paragraphs are incorporated in each count of the complaint by reference, but none of them appear to be "well-pleaded, material facts." Similarly, defendants are uncertain as to how much of the hearing transcript appended as an exhibit relates to the claims that plaintiff attempts to plead. Is all of the hearing testimony in that transcript to

be construed as allegations of fact giving rise to plaintiff's complaint, or only portions reflecting testimony favorable to plaintiff?

Defendants appreciate that plaintiff is required to do more than merely incant formulae in the complaint, and that sufficient facts must be alleged to show a "plausible" claim. Nevertheless, nothing in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), or kindred cases requires the type of pleading indulged in by plaintiff. On the contrary, given the demands for pleading a claim of municipal liability under 42 U.S.C. §1983 as discussed below, the enforcement of Rule 8(a) is peculiarly appropriate in this case.[1]

This Court can and should enforce Rule 8(a) in this case. *See, e.g.*, *Michaelis v. Nebraska State Bar Ass'n,* 717 F.2d 437 (8th Cir. 1983); *see also McHenry v. Renne,* 84 F.3d 1172, 1179-80 (9th Cir. 1996) ("Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges. As a practical matter, the judge and opposing counsel, in order to perform their responsibilities, cannot use a complaint such as the one plaintiff filed, and must prepare outlines to determine who is being sued for what."). Plaintiff's complaint as framed should be dismissed--concededly without prejudice--with leave to re-plead in conformity to Rule 8(a).

**2.    The complaint [doc. 1] fails to state a cognizable claim for damages under 42 U.S.C. §1983 against defendant City of St. Louis, in that it wholly fails sufficiently to allege an actionable policy or custom of defendant City causing a constitutional tort.**

"The Supreme Court has set a high bar for establishing municipal liability under § 1983, and demands careful analysis from district courts, to avoid any risk that liability could be imposed under a theory of respondeat superior." *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).

The first inquiry "in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged

---

[1] Several counts appear to be aimed at the individual defendants, but the constant use of the plural and incorporation by reference of all earlier counts leaves defendants uncertain as to which of them is the target of a given count. *e.g.,* Complaint [doc. 1], counts I, II, IV, V, VIII, IX, X, XI, XII, XIII, XV, and XVI.

3

constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). A plaintiff seeking to impose liability on a municipality is required to identify either an official policy or a widespread custom or practice that was the moving force behind the plaintiff's constitutional injury. *See Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Crawford v. Van Buren County, Ark*., 678 F.3d 666, 669 (8th Cir. 2012). An official policy represents the decisions of a municipality's legislative body, or of an official who maintains the final authority to establish governmental policy. *Brown*, 520 U.S. at 403; *City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988); *Ware v. Jackson County, Mo*., 150 F.3d 873, 880 (8th Cir. 1998). For a municipality to be held liable on the basis of custom, "there must have been a pattern of 'persistent and widespread' unconstitutional practices which became so 'permanent and well settled' as to have the effect and force of law." *Jane Doe "A" v. Special School Dist*., 901 F.2d 642, 646 (8th Cir. 1990); *Monell v. Dep't of Social Servs*., 436 U.S. 658, 691 (1978).

In order to state a claim for municipal liability based on a policy, custom or practice, plaintiff is required to allege facts "by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp*., 388 F.3d 588, 591 (8th Cir. 2004) (citing *Doe v. Sch. Dist. of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)).

> [T]o establish the existence of a governmental custom or failure to receive, investigate, or act on complaints of violations of constitutional rights, a plaintiff must prove: 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation. [*Special School Dist*., 901 F.2d at 646.]

**a.    The complaint [doc. 1] fails to allege facts tending to show that the City had a widespread custom or practice of violating protesters' First and Fourth Amendment rights.**
With respect to Plaintiff's Fourth Amendment rights, the complaint alleges in vague terms that City police have a "custom or policy" of using kettling without warning on citizens, issuing

4

vague dispersal orders without giving an opportunity to comply, arbitrarily declaring unlawful assemblies in the absence of any threat, regularly conducting unreasonable seizures, arresting individuals without probable cause, and routinely using excessive force when policing protests. Pl. Compl. [doc. 1], ¶ 203. As to plaintiff's First Amendment rights, the complaint alleges vaguely that City interfered with plaintiff's ability to associate freely in public, interfered with plaintiff's ability to gather information and cover a matter of public interest, retaliated against plaintiff for exercising First Amendment rights by "kettling," pepper spraying, assaulting, seizing, and charging plaintiff. Pl. Compl. ¶¶ 166, 168, 186-187. These allegations are factually insufficient to show unconstitutional conduct so persistent and widespread as to have the effect and force of law.

A city may be subject to § 1983 liability only if it had a policy or custom of failing to act upon prior similar complaints of unconstitutional conduct. *Andrews v. Fowler*, 98 F.3d 1069, 1074-75 (8th Cir. 1996) (emphasis added). There must exist a prior pattern of unconstitutional conduct that is so "persistent and widespread" as to have the effect and force of law. *Id.* at 1075. Plaintiff points to the *Ahmad* case, *Ahmad v. City of St. Louis, Missouri*, No. 4:17-CV-2455 CDP, 2017 WL 5478410 (E.D. Mo. Nov. 15, 2017), in a failed attempt to show the City Police Department has a widespread custom of violating police protesters' First and Fourth Amendment rights.

*Ahmad*, a temporary injunction case,[2] cannot be used to show City police had a widespread custom or practice of violating protesters' First and Fourth Amendment rights because the events in *Ahmad* occurred at the same time as plaintiff's allegations. The events depicted in *Ahmad* occurred in September 2017; plaintiff's complaint pertains to the same timeframe. *Ahmad*, 2017 U.S. Dist. LEXIS 188478, at *2; Pl. Compl. ¶ 123. Because the events in *Ahmad* occurred at the same time as the events at issue here, the *Ahmad* holding cannot serve as a prior similar complaint of

---

[2] Facts and conclusions determined by a court in granting or denying a preliminary injunction are provisional and nonbinding. *See Henderson v. Bodine Aluminum, Inc.*, 70 F.3d 958, 962 (8th Cir. 1995).

5

unconstitutional conduct that establishes a pattern of unconstitutional conduct. *See Andrews*, 98 F.3d at 1074-75.

Furthermore, the interlocutory decision in *Ahmad* is seriously flawed. The decision simply overlooks that a municipal constitutional violation cannot be predicated on arrests based on probable cause or arguable probable cause. By importing the record of testimony in *Ahmad* into the complaint, plaintiff merely demonstrates that the conduct of defendant police officers in arresting or otherwise attempting to disperse protesters was based on probable cause to believe that the protesters were violating state law forbidding unlawful assemblies. The subjective motives of the officers--whether retaliatory or not--are simply irrelevant. Thus, even assuming that defendant City and its police officers dislike anti-police protesters, there is no constitutional tort if the actions of the police are objectively based on probable cause to believe that protesters have violated or are violating the law. *See White v. Jackson,* 865 F.3d 1064 (8th Cir. 2017); *c.f. Hartman v. Moore,* 547 U.S. 250 (2006).

Plaintiff's two other examples of police protests do not establish a pattern or practice of unconstitutional conduct. The complaint points to only two other examples of police protests where City police allegedly maced protesters. Pl. Compl. ¶¶ 37, 38. Plaintiff's mention of two other incidents of police protests, both of which took place in 2015, are insufficient to establish a pattern of unconstitutional conduct that is so "persistent and widespread" as to have the effect and force of law. *See Andrews*, 98 F.3d at 1076 ("two instances of misconduct . . . do not indicate a 'persistent and widespread' pattern of misconduct that amounts to a city custom or policy…."). Therefore, plaintiff cannot show that the alleged unconstitutional conduct by City police, as assumed true for purposes of this motion, was so persistent and widespread as to have the effect and force of law at the time of plaintiff's allegations, and plaintiff's *Monell* claim against City should be dismissed.

**b.     Plaintiff fails to allege facts sufficient to state a claim that City had an unconstitutional official policy regarding plaintiff's First and Fourth Amendment rights.**

Plaintiff also fails to plead facts identifying an official policy that directly caused the violation of plaintiff's First and Fourth Amendment rights. *Harris*, 489 U.S. at 385. An official

policy involves "a deliberate choice to follow a course of action made from among various alternatives by an official who is determined by state law to have the final authority to establish governmental policy." *Ware*, 150 F.3d at 880. A policy may take the form of a policy statement, local ordinance, regulation, or decision officially adopted and promulgated by a local government's officers. *Monell*, 436 U.S. at 690.

Here, plaintiff has failed to plead facts tending to show that a City policymaker with final authority officially adopted and promulgated a policy statement or decision directing officers to unreasonably search, seize, use excessive force, or otherwise retaliate against protesters. As such, plaintiff's claim that the City had an unconstitutional official policy fails to state a claim to relief that is plausible on its face and should be dismissed. *Twombly*, 550 U.S. at 570.

**c.    Plaintiff fails to allege facts sufficient to state a claim under *Monell* that City failed to train, discipline, or supervise its police.**

A city may be liable for deficient policies regarding training police officers where (1) the city's training practices are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice by a municipality; and (3) an alleged deficiency in the city's training procedures actually caused the plaintiff's injury. *Andrews*, 98 F.3d at 1076 (citations omitted). Other than mere formulaic recitation of the above elements, plaintiff alleges no facts which would plausibly state a claim that City's training practices are inadequate, City was deliberately indifferent to the rights of other in adopting said training practices, and City's training procedures caused plaintiff's injuries. Likewise, plaintiff makes no plausible allegations that City's discipline or supervision of police officers was inadequate, City was deliberately indifferent to the rights of others when disciplining or supervising its police, or that City's failure to discipline and supervise its police caused plaintiff's injury. Because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to defeat a motion to dismiss," plaintiff's *Monell* claim regarding City's failure to

train, discipline, or supervise its police officers should be dismissed. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

**d.      Plaintiff's civil conspiracy claims against City fail to state a claim, because the civil conspiracy claim against City is barred by the intracorporate conspiracy doctrine.**

Because a conspiracy by its nature involves multiple parties, the intracorporate conspiracy doctrine provides that "a local government entity cannot conspire with itself through its agents acting within the scope of their employment." *Kelly v. Cty of Omaha*, 813 F.3d 1070, 1078 (8th Cir. 2016) (citing *L.L. Nelson Enters., Inc. v. Cty. of St. Louis, Mo.*, 673 F.3d 799, 812 (8th Cir. 2012)). Government agents can act within the scope of their employment duties "even though [a] complaint alleges improprieties in the execution of these duties." *L.L. Nelson Enters., Inc.,* 673 F.3d at 812 (8th Cir. 2012) (holding that "[t]he referral of moving companies to property owners seeking the execution of evictions was within the scope of employment for deputies and staff members in the sheriff's office" even where employees used those referrals to execute a kickback scheme and to punish a moving company seeking to end that scheme); *see also Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 n.7 (8th Cir. 1983) (finding alleged acts of company's agents within the scope of their employment where those acts included making "false entries" in plaintiff's employment records, improperly denying the plaintiff overtime pay, and "physically batter[ing]" the plaintiff).

Here, plaintiff alleges City conspired with its police officers to violate plaintiff's civil rights. This case is similar to *Kelly v. City of Omaha*, 813 F.3d 799 (8th Cir. 2016). In that case, the plaintiff brought a conspiracy claim against the City of Omaha alleging violations of her civil rights under the Fourth, Fifth, and Fourteenth Amendments. *Id.* The Eighth Circuit affirmed the district court's dismissal of the city, holding that although the plaintiff alleged improprieties in the execution of the city employees' duties, this fact alone was insufficient to evade the intracorporate conspiracy doctrine. *Id.* at 1079. Here, similarly, plaintiff does not allege City's police officers were acting outside the scope of their employment duties; plaintiff merely alleges improprieties in the execution of their duties. Like in *Kelly*, this Court should find plaintiff's allegations of improprieties are

insufficient to state a claim for civil conspiracy against City, as said claims are barred by the intracorporate conspiracy doctrine.

**e.      Plaintiff's civil conspiracy claim against City fails because the underlying claims, upon which the conspiracy claim is premised, fail.**

In the absence of a violation, there is no actionable conspiracy claim. *Cook v. Tadros*, 312 F.3d 386, 388-89 (8th Cir. 2002) (citing to *Hanten v. School Dist. of Riverview Gardens*, 183 F.3d 799, 809 (8th Cir. 1999) (affirming dismissal of violation of employees' right of free association claim under section 1983, holding that a civil conspiracy claim does not set forth an independent cause of action, but is sustainable only after an underlying violation has been established); and *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) (holding that a conspiracy claim is not actionable without an actual violation of section 1983) (vacated in part on other grounds)).

As demonstrated throughout this memorandum in support, plaintiff fails to state a claim under any count of the complaint, against City or otherwise. Because the complaint fails to state a claim for the underlying actions, plaintiff's civil conspiracy claim against City must fail, as it is not an independent cause of action.

**4.      The complaint [doc. 1] fails to state viable claims for relief on the basis of the Missouri law of torts, in that the complaint fails to overcome sovereign immunity of defendant City or official immunity of the individual defendants.**

Plaintiff attempts to plead a variety of state law tort claims against all defendants. The complaint is unsuccessful.

The Court should dismiss plaintiff's state law tort claims alleged against City in counts VIII, IX, X, XI, XII, XIII, XV, and XVI because such claims are barred by sovereign immunity. Under Missouri law, sovereign immunity renders public entities "immune from suit for their negligent acts unless the General Assembly has expressly waived such immunity." *Phelps v. City of Kansas City*, 371 S.W.3d 909, 912 (Mo. App. W.D. 2012). The express waivers of sovereign immunity arise where a person sustains injuries (1) directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or (2) caused by a dangerous condition of a

public entity's property." §537.600 RSMo; *see also Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 764 (Mo. banc 2006); *McNeill Trucking Co. v. Mo. State Hwy. and Transp. Comm'n*, 35 S.W.3d 846, 848 (Mo. banc 2001) (general rule is that government may not be sued without its consent); *St. Louis Police Officers' Ass'n v. Bd. of Police Comm'rs*, 846 S.W.2d 732, 735 (Mo. App. E.D. 1992) (police board immune except to the extent immunity has been waived by Missouri state statute); *Krasney v. Curators of Univ. of Missouri*, 765 S.W.2d 646, 649-50 (Mo. App. W.D. 1989) (absent an express waiver of immunity, a governmental entity may not be sued for torts or claims that are tort-like).

Municipalities may waive sovereign immunity under §537.610 RSMo by purchasing insurance, but only to the extent of the insurance policy purchased. *State ex rel. Bd. of Trustees of City of N. Kansas City Mem'l Hosp. v. Russell*, 843 S.W.2d 353, 360 (Mo. 1992). Section 537.610 RSMo states that "Sovereign immunity for the state of Missouri and its political subdivisions is waived only to the maximum amount of and only for the purposes covered by such policy of insurance purchased pursuant to the provisions of this section and in such amount and for such purposes provided in any self-insurance plan duly adopted by the governing body of any political subdivision of the state." The statute further expressly precludes any award of punitive damages, with or without insurance. §537.610.3.

Sovereign immunity is not an affirmative defense but is part of a plaintiff's prima facie case. *St. John's Clinic, Inc. v. Pulaski Cty. Ambulance Dist.*, 422 S.W.3d 469, 471 (Mo. App. S.D. 2014). As such, a plaintiff must plead each element of an alleged waiver of sovereign immunity. *Id.* "A reviewing court will construe narrowly any such waiver of sovereign immunity." *Topps v. City of Country Club Hills*, 272 S.W.3d 409, 415 (Mo. App. E.D. 2008). "Because finding a municipality liable for torts is the exception to the general rule of sovereign immunity, a plaintiff must plead with specificity facts demonstrating his claim falls within an exception to sovereign immunity." *Id.* (citing *Parish v. Novus Equities Co.*, 231 S.W.3d 236, 242 (Mo. App. E.D. 2007)). "The plaintiff shoulders

the burden of proving the existence of an insurance policy and proving that the terms of the policy cover the claims asserted by the plaintiff against the municipality." *Id*; *see also Investors Title Co. v. Hammonds,* 217 S.W.3d 288, 300 (Mo. banc 2007).

In Counts VIII, IX, X, XI, XII, XIII, XV, and XVI of the complaint, plaintiff purports to allege tort claims of "assault fourth degree,"[3] false arrest, false imprisonment, abuse of process, malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, battery, and malicious trespass of property under Missouri state law. However, such claims do not arise from an automobile accident or an unsafe property condition and are therefore barred under the doctrine of sovereign immunity.

Plaintiff attempts to allege a waiver of sovereign immunity claiming first that City has "obtained insurance from the Public Facilities Protection Corporation, a not for profit corporation in which the City pays funds yearly." Pl. Compl. [doc. 1], ¶ 213. Plaintiff also argues, in the alternative, that sovereign immunity has been waived because "the City's relationship with the PFPC serves as a self-insurance plan" as "its sole purpose is to provide with City with a defined and funded self-insurance program for claims, judgments, and other related legal matters…." Pl. Compl. [doc. 1] ¶ 214. Plaintiff has failed to carry his burden of establishing a waiver of sovereign immunity as he has set forth no facts which indicates that his claims fall within either the specific purposes "covered by such policy of insurance...." or the specific "purposes provided in any self-insurance plan duly adopted by the governing body of any political subdivision of the state." §537.610 RSMo; *see also Hummel v. St. Charles City R-3 School Dist.*, 114 S.W.3d 282, 284 (Mo. App. E.D. 2003) ("Whether sovereign immunity is waived in a particular case depends on whether the plaintiff's claim falls within the purposes covered by the defendant's policy."). There is nothing in the complaint to show that the City's reliance on the Public Facilities Protection Corporation to pay claims is a self-

---

[3] Under Missouri law, "assault fourth degree" is a criminal charge, not the basis of a private cause of action. §565.056, RSMo. The elements of the tort of assault are explicated by, e.g., *Phelps v. Bross,* 73 S.W.3d 651 (Mo. App. E.D. 2002).

11

insurance plan duly adopted by the governing body of the City of St. Louis. §537.610.1, RSMo. It would be remarkable indeed if the City opted to "self-insure" intentional torts of its officers. Accordingly, plaintiff's allegations that sovereign immunity has been waived in this case fail.

This court should dismiss plaintiffs' official capacity state law claims against Leyshock, Boyher, Sachs, Jemerson, Karnowski, and Rossomanno in Counts VIII, IX, X, XI, XII, XIII, XV, and XVI as the claims are barred by sovereign immunity.  Under Missouri Law, sovereign immunity bars suits against government employees in their official capacity, as such suits are essentially direct claims against their employing governmental entity. *Betts-Lucas v. Hartmann*, 87 S.W.3d 310, 327 (Mo. App. W.D. 2002) (citing *Edwards v. McNeill*, 894 S.W.2d 678, 682 (Mo. App. W.D.1995)). The United States Court of Appeals for the Eighth Circuit recently affirmed that, unless waived, sovereign immunity bars state law claims against government employees in their official capacities. *Montin v. Moore*, 846 F.3d 289, 292 (8th Cir. 2017) (citing *Alden v. Maine*, 527 U.S. 706, 712–13 (1999)). Because City is immune from suit under sovereign immunity, so too are defendants Leyshock, Boyher, Sachs, Jemerson, Karnowski, and Rossomanno in their official capacities.

Here, Leyshock, Boyher, Sachs, Jemerson, Karnowski, and Rossomanno are sued in their individual and official capacities. Plaintiff's official capacity state law claims in Counts VIII, IX, X, XI, XII, XIII, XV, and XVI do not fall into either of the two statutory exceptions to sovereign immunity set forth by RSMo § 537.600. Plaintiff's official capacity state law claims are therefore barred by sovereign immunity and should be dismissed.

Further, this Court should dismiss Counts VIII, IX, X, XI, XII, XIII, XV, and XVI against defendants Leyshock, Boyher, Sachs, Jemerson, Karnowski, and Rossomanno in their individual capacity because these state-law claims are barred by Missouri's official immunity doctrine. Under Missouri law, the doctrine of official immunity provides that "public officials acting within the scope of their authority are not liable in tort for injuries arising from their discretionary acts or omissions." *Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002). The official immunity doctrine applies to

protect public officials from an action for damages arising from their discretionary acts or omissions while acting within the scope of their authority. *Southers v. City of Farmington, et al.,* 263 S.W.3d 603, 610 (Mo.banc 2008) (citing *Davis*, 193 S.W.3d at 763). A discretionary act is one that requires the exercise of reason in the adoption of means to an end and discretion in determining how or whether an act should be done or course pursued. *Southers*, 263 S.W.3d at 610 (citing *Kanagawa v. State*, 685 S.W.2d 831, 836 (Mo. banc 1985)). Factors to consider include the nature of the officials' duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment and the likely consequences of withholding immunity. *Id*. Official immunity is intended to provide protection for individual government actors who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties. *Davis*, 193 S.W.3d at 765. Its goal is also to permit public employees to make judgments affecting public safety and welfare without concerns about possible personal liability. *Id*.

A police officer's decision to use force in the performance of his duties is discretionary rather than ministerial, unless done in bad faith or with malice. *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Id*. "Bad faith" means "conscious wrongdoing" or "breach of a known duty through some ulterior motive." *Id*. (quotations omitted).

Here, Leyshock, Boyher, Sachs, Jemerson, Karnowski, and Rossomanno were responding to an ongoing protest where random and unpredictable acts of violence occurred. The officers utilized their professional expertise and judgment in responding to the protest. They were acting within the scope of their official duties and exercised judgment in the performance of those duties. These are the type of discretionary acts which official immunity protects. As the Missouri Supreme Court has noted, police officers "despite limited resources and imperfect information, must exercise judgment in the performance of their duties." *Davis*, 193 S.W.3d at 765. By Missouri law, they are protected

from liability when doing so. Plaintiffs do not allege with particularity that Defendants performed any duties with bad faith or malice in Counts VIII, IX, X, XI, XII, XIII, XV, and XVI. Under *Davis*, Missouri's official immunity doctrine clearly shields Defendants from liability absent proof of bad faith or malice. Therefore, plaintiff's individual capacity state law claims against defendants Leyshock, Boyher, Sachs, Jemerson, Karnowski, and Rossomanno are barred by official immunity and should be dismissed.

**5.    The allegations of the complaint [doc. 1] referring to the merits of other litigation and impugning the verdict in the prosecution of Officer Stockley, and incorporating wholesale various exhibits in regard to the verdict and other litigation, should be stricken.**

Defendants recognize that the motion to strike under F.R.Civ.P. 12(f) is not favored. Nevertheless, this Court enjoys "liberal discretion" in the matter, *see BJC Health Sys. v. Columbia Cas. Co.,* 478 F.3d 908 (8th Cir. 2007), and defendants submit that, if the deviation from Rule 8(a) is to be countenanced by the Court, the immaterial and impertinent allegations should be stricken, and no answer required thereto. Defendants do not seek to strike the entire complaint based on Rule 12(f), but rather only the paragraphs that inject immaterial or impertinent allegations, to which the defendants are at a loss to frame an answer.

Defendants submit that ¶¶ 18-23, 25-26, 33-36, and 112-122 are immaterial and impertinent. They do more than merely provide context for plaintiff's complaint. They inject the merits of the verdict acquitting Officer Stockley, they import orders and decrees from other litigation, as well as extensive portions of the preliminary injunction record in another pending case. They make it difficult or impossible for defendants to know what allegations actually form the basis of the claims against them, as opposed to society at large.

Rule 12(f) can be deployed to clean up the pleadings, *see e.g. Blake v. Batmasian,* 318 F.R.D. 698 (S.D. Fla. 2017), and defendants submit that such an application is appropriate here.[4]

---

[4] Plaintiff's injection of the *Ahmad* case record is ironic, in that the complaint in that case, while without merit, exemplifies how claims arising out of the 2017 protests can be artfully and succinctly pleaded.

CONCLUSION

For the foregoing reasons, defendants submit that the complaint [doc. 1] can and must be dismissed, under either Rule 8(a) or Rule 12(b)(6). In the alternative, defendants request that ¶¶ 18-23, 25-26, 33-36, and 112-122 be stricken from the complaint and no answer thereto required.

Respectfully submitted,<br>
JULIAN L. BUSH<br>
CITY COUNSELOR<br>
<br>
/s/ Robert H. Dierker<br>
Robert H. Dierker 23671MO<br>
Associate City Counselor<br>
dierkerr@stlouis-mo.gov<br>
Abby Duncan 67766MO<br>
Assistant City Counselor<br>
Meghan Bruyns 69987MO<br>
Assistant City Counselor<br>
1200 Market St.<br>
City Hall, Rm 314<br>
St. Louis, MO 63103<br>
314-622-3361<br>
Fax 314-622-4956

**Certificate of Service**

I hereby certify that on December 19, 2018, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system.

/s/ Robert H. Dierker