UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEITH ROSE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:18CV1568 RLW |
| ) | |
| CITY OF ST. LOUIS, MISSOURI, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss and Alternative Motion to Strike. (ECF No. 34) Plaintiff Keith Rose ("Plaintiff") has filed a Memorandum in Opposition (ECF No. 36), and Defendants have filed a Reply (ECF No. 37). For the reasons set forth below, the Motion to Dismiss is denied in part and granted in part. The Alternative Motion to Strike is denied.

## I. BACKGROUND[1]

This case stems from public protests following the acquittal of Officer Jason Stockley after a bench trial on the charge of first-degree murder in the Circuit Court of the City of St. Louis, Missouri ("*Stockley*"). (Pl.'s Second Am. Compl., ECF No. 32) The protests concerned not only the *Stockley* verdict but also broader issues in the St. Louis community, including concerns of racism in the criminal justice system and the use of force by white police officers against African-American citizens. While most of the protests were non-violent. "St. Louis Metropolitan police ["SLMPD"] officers amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields and carrying chemicals, such as tear

---

[1] The facts, taken as true for purposes of this motion to dismiss, are taken from the allegations set forth in Plaintiff's Second Amended Complaint. (ECF No. 32)

gas, skunk, inert smoke, pepper gas, pepper pellets, xylyl bromide, and/or similar substances." (*Id.* at ¶¶ 28, 30) Further, "[d]uring the protests, SLMPD officers *without warning* deployed chemical agents against individuals observing, recording, or participating in protest activity." (*Id.* at ¶ 32)

On September 17, 2017 around 9:00 p.m., Plaintiff went to downtown St. Louis to document the protests. SLMPD officers instructed Plaintiff and others to go to the intersection of Washington and Tucker. Plaintiff complied with the officers' directive, and he also complied with an order to stand four to five feet away from the police line. Around 11:15 p.m., police in riot gear and police on bicycles blocked the street and sidewalks at the Washington and Tucker intersection, surrounding and kettling[2] Plaintiff and others. Plaintiff was instructed to sit on the ground and cease using his phone to record. Plaintiff complied with the order to sit. However, SLMPD officers zip tied Plaintiff and sprayed him with pepper spray. Officers then lined Plaintiff against a building, and one officer patted him down, removed Plaintiff's iPhone from his pocket, and slammed the phone to the ground, destroying it.[3] Plaintiff was then transported to the St. Louis City Justice Center and held for approximately 15 hours, with no medical attention provided for the pain and burning from the pepper spray.

Plaintiff claims he complied with all directives from SLMPD officers and was not engaged in unlawful activity at any time during the police encounter. Plaintiff further alleges

---

[2] According to Plaintiff's Complaint, the term "kettling" refers to SLMPD police officers blocking the intersection of Washington Avenue and Tucker Boulevard and trapping everyone without providing a means of egress. (ECF No. 32 ¶¶ 81-85)

[3] Plaintiff only identifies Officer Aaron Gaddis ("Gaddis") as the officer who arrested Plaintiff. None of the other individual police officers who allegedly used chemical munitions against Plaintiff, beat him, prevented him from leaving the area, and unlawfully arrested Plaintiff have been identified. (ECF No. 32 ¶¶ 16-17) Defendant Gaddis entered his appearance on August 23, 2019 but has not yet filed an answer.

2

during and after the arrests, SLMPD officers "were observed high fiving each other, smoking celebratory cigars, taking selfies on their personal phones with arrestees against the arrestees will, and chanting 'Whose Streets? Our Streets!'" (ECF No. 32 ¶ 106)

On September 17, 2018, Plaintiff filed a complaint against the City of St. Louis, Missouri ("City"), six supervising officers ("Supervisors")[4] in their individual and official capacities, and five John Does in their individual and official capacities. Plaintiff filed a 14-count second amended complaint on February 19, 2019 against the City, the Supervisors, the arresting officer Gaddis, and five John Does. The counts against Defendants in Plaintiff's second amended complaint allege civil rights violations under 42 U.S.C. § 1983 including: Fourth and Fourteenth Amendment violations for unreasonable seizure against all individual Defendants (Count I); First and Fourteenth Amendment violations for interfering with Plaintiff's rights to freedom of speech and freedom of assembly against all individual Defendants (Count II); conspiracy to deprive civil rights against all Defendants (Count III); municipal liability for failure to train, failure to discipline, failure to supervise, and having a custom of conducting unreasonable search and seizures and using excessive force against the City (Count IV); and Fourth and Fourteenth

---

[4] The Supervisors are Lieutenant Colonel Gerald Leyshock, the incident commander during the events of September 17, 2017, who allegedly approved the plan to restrict the movement of individuals who were attempting to leave the vicinity of Washington Avenue and Tucker Boulevard and to arrest everyone present; Lieutenant Timothy Sachs, who allegedly developed the plan described above, deployed the tactical units accordingly, ordered the use of chemical agents, and brought in the team of officers to effectuate a mass arrest; Lieutenant Scott Boyher, who allegedly directed the officers under his command in using their bicycles to block the street and sidewalks, and directed the officers to use force and to arrest the protestors; Sergeant Matthew Karnowski, who allegedly declared the protests an "unlawful assembly," which SLMPD used as a predicate to the arrests and use of the chemical agents, and also directed the officers under his command to use force and to arrest the protestors; Sergeant Randy Jemerson, who allegedly directed people to the intersection of Washington and Tucker pursuant to the plan described above; and Sergeant Brian Rossomanno, who also allegedly directed people to the intersection, and was "within arms-length" of the officers who pepper sprayed and used force against the protestors.

3

Amendment violations for excessive force against all individual Defendants (Count XII). Plaintiff also raises several supplemental state-law claims against all Defendants including: assault (Count V); false arrest (Count VI); false imprisonment (Count VII); abuse of process (Count VIII); malicious prosecution (Count IX); intentional infliction of emotional distress (Count X); negligent infliction of emotional distress (Count XI); battery (Count XIII); and malicious trespass of property (Count XIV).

The City and Supervisors have moved to dismiss Plaintiff's second amended complaint for failure to comply with the "short and plain statement" requirement of Fed. R. Civ. P. 8(a). Alternatively, the City and Supervisors move to strike certain paragraphs of the second amended complaint under Fed. R. Civ. P. 12(f) as immaterial and impertinent. The specific allegations Defendants seek to strike pertain to the *Stockley* verdict, the nature of public protests in response, and prior orders of this Court concerning actions taken by the SLMPD in response to public protests.

In addition, the City moves to dismiss Plaintiff's claim of municipal liability under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff has failed to allege sufficient facts to state a claim that the City had an unconstitutional policy, custom, or practice and that the City failed to train, discipline, or supervise its police under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). The City also argues Plaintiff's civil conspiracy claims should be dismissed as barred by the intracorporate conspiracy doctrine pursuant to *Kelly v. City of Omaha, Nebraska*, 813 F.3d 1070 (8th Cir. 2016). Additionally, the City maintains Plaintiff's state law claims are barred by sovereign immunity, and Plaintiff has not established the requisite waiver. Nevertheless, the City asserts § 537.610.3 of Missouri Revised Statutes precludes the recovery of punitive damages on Plaintiff's state law claims.

The Supervisors contend the Court should dismiss Plaintiff's § 1983 claims because there is no *respondeat superior* liability, and Plaintiff has failed to allege personal participation by the Supervisors in the alleged constitutional violations. The Supervisors further assert they are entitled to official immunity on Plaintiff's state law claims.

In addition, the City and Supervisors claim the infliction of emotional distress claims are not actionable because the same facts give rise to another cognizable tort, namely assault. Further, they assert the claims alleging battery and assault are duplicative.

## II. DISCUSSION

The City and Supervisors move to dismiss the second amended complaint for failure to comply with Fed. R. Civ. P. 8(a) which requires a "short and plain statement." They also move to dismiss the complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative, Defendants move to strike certain paragraphs under Fed. R. Civ. P. 12(f) as immaterial and impertinent.

### A. Motion to Dismiss under Rule 8(a) or Motion to Strike under Rule 12(f)

The City and Supervisors (collectively "Defendants") seek dismissal of Plaintiff's second amended complaint for failure to comply with Rule 8(a)'s requirement that a pleading must contain a "short and plain" statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a). Defendants argue the complaint is "replete with tendentious, inflammatory, and immaterial allegations." (ECF No. 35 p. 2) Specifically, Defendants object to Plaintiff's allegations regarding the *Stockley* verdict, the nature of the public protests in response, the prior orders concerning SLMPD actions in response to public protests, and the attachment of hearing transcript documentation to the complaint. (*Id.* at pp. 2-3) In the alternative, Defendants move to strike these allegations and exhibits pursuant to Rule 12(f) as immaterial and impertinent.

5

As other judges in this District have held with respect to the same challenge in related *Stockley* cases, the complaint's factual allegations and the supporting exhibits to which Defendants object are relevant to Plaintiff's municipal liability claim at a minimum. *See, e.g., Newbold v. City of Saint Louis, Missouri*, No. 4:18CV1572 HEA, 2019 WL 3220405, at *4 (E.D. Mo. July 16, 2019); *Thomas v. City of St. Louis, Missouri*, No. 4:18-CV-01566 JAR, 2019 WL 3037200, at *4 (E.D. Mo. July 11, 2019); *Laird v. City of Saint Louis, Missouri*, No. 4:18-CV-01567-AGF, 2019 WL 2647273, at *3–4 (E.D. Mo. June 27, 2019); *Laney v. City of St. Louis, Missouri*, No. 4:18 CV 1575 CDP, 2019 WL 2423308, at *3 (E.D. Mo. June 10, 2019); *Aldridge v. City of St. Louis, Missouri,* No. 4:18-CV-1677 CAS, 2019 WL 1695982, at *4-5 (E.D. Mo. Apr. 17, 2019). The Court therefore finds dismissal under Rule 8(a), or in the alternative striking certain allegations and documents pursuant to Rule 12(f), is not warranted.

## B. Standard for Motion to Dismiss under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts must liberally construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *Id.* at 555; *see also Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (stating that in a motion to dismiss, courts accept as true all factual allegations in the complaint); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (explaining that courts should liberally construe the complaint in the light most favorable to the plaintiff). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. This plausibility standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the claim. *Id.* at 556.

### 1. Individual liability of Supervisors under § 1983

In his second amended complaint, Plaintiff alleges the Supervisors violated his First, Fourth, and Fourteenth Amendment rights by unlawfully arresting Plaintiff, interfering with his right to freedom of speech and freedom to assemble, and using excessive force. The Supervisors contend the doctrine of *respondeat superior* does not apply to § 1983 claims, and the complaint fails to demonstrate the Supervisors participated in a constitutional tort.

While the doctrine of *respondeat superior* does not apply to § 1983 cases, a supervisor may still be individually liable under § 1983 "(1) if the supervisor directly participated in the constitutional violation; (2) if the supervisor failed or refused to intervene when a constitutional violation took place in his presence; (3) if the supervisor's failure to train or supervise the employee caused the constitutional violation; or (4) if the supervisor created a policy or custom under which the constitutional violation occurred." *B.J.G. ex rel. McCray v. St. Charles Cty. Sheriff*, No. 4:08CV1178 CDP, 2010 WL 1838414, at *3 (E.D. Mo. May 6, 2010) (citations omitted), *aff'd sub nom. B.J.G. ex rel McCray v. St. Charles Cty. Sheriff*, 400 F. App'x 127 (8th Cir. 2010). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." *Ottman v. City of Indep., Mo.*, 341 F.3d 751, 761 (8th Cir. 2003).

The Court notes the single paragraph pertaining to the Supervisors' individual liability under § 1983 in the motion to dismiss does not refer to Plaintiff's unlawful arrest claim in Count

7

I, First Amendment claim in Count II, or civil conspiracy claim in Count III. Rather, the Supervisors refer only to Plaintiff's excessive force claim in Count XII. The Court therefore concludes that the Supervisors' motion to dismiss Plaintiff's § 1983 claims is directed only to Count XII, and the Court will limit its discussion accordingly.

In Count XII, Plaintiff alleges that the officers' use of zip-cuffs, kettling, and pepper spray each constituted excessive force. Without deciding whether each of these actions could in fact constitute excessive force, at this stage, Plaintiff adequately alleges the Supervisors' direct involvement in them. Plaintiff alleges specific facts describing each of the Supervisor's roles in planning, approving, and executing the alleged uses of force. The Court will thus deny the Supervisors' motion to dismiss the § 1983 claims against them.

### 2. Civil conspiracy claims against the City

Plaintiff claims the Defendants engaged in a civil conspiracy to deprive Plaintiff of his constitutional rights by designing, implementing, and executing an illegal kettling plan with the intent to unlawfully arrest and use excessive force on Plaintiff. (ECF No. 32 ¶¶ 189-199) "To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citation omitted). The first element "requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators." *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *White*, 519 F.3d at 814.

The City challenges Plaintiff's § 1983 conspiracy claim on the basis that the claim is barred by the intracorporate doctrine. The Court notes the cases relied upon by the City involved

8

conspiracy claims under 42 U.S.C. § 1985. *See Kelly*, 813 F.3d at 1078 (the intracorporate doctrine provides a local government cannot conspire with itself through its agents acting in the scope of employment). However, the Eighth Circuit has not addressed whether this doctrine applies to § 1983 conspiracy claims, and in the absence of such direction from the Eighth Circuit, the judges in this District—including in another *Stockley* protest case—have consistently declined to extend the doctrine's reach, at least at the pleading stage. *See Aldridge*, 2019 WL 1695982, at *8 (collecting cases). The Court agrees with judges in this District and finds it inappropriate to apply the intracorporate conspiracy doctrine at this stage.

Further, the Court rejects the City's argument that the conspiracy claim fails because the underlying claims fail. As stated above, Defendants' motion to dismiss fails to address Plaintiff's unlawful arrest and First Amendment claims. Because a constitutional violation may be proved on those claims, the City's argument lacks merit. *See White*, 519 F.3d at 815. Therefore, the City's motion to dismiss Plaintiff's § 1983 conspiracy claim will be denied.

### 3. *Monell* liability against the City

Plaintiff alleges the following policies, practices, or customs caused the alleged constitutional violations in this case, making the City liable under *Monell*:[5]

> a. SLMPD officers' routine use of excessive force when policing protests, especially those at which police brutality is being protested;
>
> b. SLMPD custom or policy of using kettling without warning on citizens who are not resisting arrest and who are exercising First Amendment rights, whether those rights be protesting or reporting;
>
> c. SLMPD's policy or custom of issuing vague and even contradictory dispersal orders without giving an opportunity to comply;

---

[5] In *Monell*, the Supreme Court held that a government, under color of some official policy, is liable where it "'causes' an employee to violate another's constitutional rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978).

9

    d. SLMPD's policy of arbitrarily declaring unlawful assemblies in the absence of any threat or force or violent activity that provides no notice to citizens or unlawful conduct;

    e. Additionally, SLMPD has a custom, policy, or practice of violating the Fourth Amendment by regularly conducting unreasonable seizures and arresting individuals without probable cause.

(ECF No. 32 ¶ 201) Plaintiff also claims the City inadequately trained, supervised, and disciplined SLMPD officers with respect to its officers' use of kettling and use of force. (*Id.* at ¶ 202)

Liability under § 1983 for a constitutional violation may attach to a municipality if the Plaintiff establishes the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). In its motion to dismiss, the City argues Plaintiff's factual allegations are insufficient to establish any of these bases for liability.

### a. Official policy or custom

As held by other judges in this District with respect to similar *Monell* allegations raised in the related cases, the Court finds Plaintiff's second amended complaint "plausibly alleges that specific SLMPD policies or customs were the moving force behind the constitutional violations they suffered." *Laird*, 2019 WL 2647273, at *5; *see also Thomas*, 2019 WL 3037200, at *6; *Laney*, 2019 WL 2423308, at *5.

Specifically, Plaintiff alleges a pattern of using chemical agents without warning against peaceful protestors complaining of police actions, including incidents in October and November 2014, in May and August 2015, and in July 2017; as well as additional incidents that occurred after the *Stockley* verdict on September 15, 2017. Plaintiff further alleges the City entered into a settlement agreement in March 2015 in *Templeton, et al. v. Dotson, et al.*, No. 4:14-CV-2019

10

CEJ (E.D. Mo.), in which it agreed not to use chemical agents to disperse groups of individuals engaged in non-criminal activity without first issuing clear and unambiguous warnings that such chemical agents would be used and without ensuring that there is a means of safe egress from the area (among other protections). However, after the consent decree was entered, SLMPD officers continued to use chemical agents against non-violent protestors without adequate warning or opportunity to comply. (ECF No. 32 ¶¶ 34-42) These factual allegations are sufficient to support the existence of an unconstitutional policy or custom that plausibly caused the constitutional violations here. Therefore, the City's motion to dismiss Plaintiff's *Monell* claims based on an unconstitutional policy or custom will be denied.

### b. **Failure to train or supervise**

With respect to Plaintiff's claim that the City failed to train or supervise SLMPD officers, the Court agrees with the City that these conclusory allegations fail to survive a motion to dismiss. To state a viable claim under § 1983 for failure to train or supervise, Plaintiff must plead facts sufficient to establish: (1) the City's officer-training and supervision practices were inadequate; (2) the City was deliberately indifferent to the rights of others in adopting these practices, such that the City's failure to train and supervise resulted from deliberate and conscious choices it made; and (3) the City's alleged training and supervision deficiencies caused Plaintiff's constitutional deprivation. *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citation omitted).

Other than a conclusory allegation that the "City has inadequately trained, supervised, and disciplined SLMPD officers, with respect to its officers' use of kettling and use of force," Plaintiff has failed to plead any facts to support this allegation. (ECF No. 32 ¶ 202) The Court agrees with the judges in related cases, who have held this allegation alone is insufficient to state a claim upon which relief can be granted. *Thomas*, 2019 WL 3037200, at *6; *Laird*, 2019 WL

11

2647273, at *6; *Laney*, 2019 WL 2423308, at *6. The Court will therefore grant the City's motion to dismiss Plaintiff's *Monell* claim to the extent the claim is based on the City's alleged failure to supervise, train, and discipline SLMPD officers.

### 4. State law claims

Plaintiff also raises state law claims for assault, false arrest, false imprisonment, abuse of process, malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, battery, and malicious trespass of property. The City contends it is entitled to sovereign immunity on Plaintiff's state law claims, and the Supervisors argue they are entitled to official immunity. Defendants collectively assert Plaintiff's claims of infliction of emotional distress claims are not actionable because the same facts give rise to another cognizable tort, namely assault. Further, they assert the claims alleging battery and assault are duplicative. In addition, the City claims punitive damages are not available where sovereign immunity has been waived.

#### a. Sovereign immunity

"[I]n the absence of an express statutory exception to sovereign immunity, or a recognized common law exception such as the proprietary function and consent exceptions, sovereign immunity is the rule and applies to all suits against public entities[.]" *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors,* 476 S.W.3d 913, 921-22 (Mo. 2016). Missouri law provides three statutory exceptions to sovereign immunity, including, as relevant here, when a political subdivision purchases liability insurance to cover certain tort claims, in the amount of and for the purposes covered by the insurance purchased. Mo. Rev. Stat. § 537.610.1; *see also Hammer v. City of Osage Beach*, 318 F.3d 832, 841 (8th Cir. 2003). "[A] plaintiff must specifically plead facts demonstrating that the claim is within this exception to sovereign

immunity" by pleading the existence of insurance and that the insurance covers the plaintiff's claim. *Epps v. City of Pine Lawn*, 353 F.3d 588, 594 (8th Cir. 2003).

Here, with respect to Plaintiff's state law claims against Defendants, Plaintiff alleges "Defendant City of St. Louis obtains insurance from the Public Facilities Protection Corporation [PFPC], a not for profit corporation into which the City pays funds yearly. The funds are later disbursed by the corporation to pay claims against the City." (ECF No. 32 ¶¶ 211, 226, 238, 248, 255, 272, 280) Plaintiff further claims, "[a]lternatively, the City's relationship with the PFPC serves as a self-insurance plan. The 2017 Comprehensive Annual Financial Report for the City of St. Louis, Missouri states '[t]he PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters....'" (*Id.* at ¶¶ 212, 227, 239, 249, 256, 273, 281) Plaintiff specifically alleges, "[b]y possessing such insurance or self-insurance, the City has waived sovereign immunity on state claims pursuant to [Mo. Rev. Stat.] § 537.610.1."

The Court agrees with the other judges in this District who have held that the same or similar allegations of PFPC insurance or self-insurance are sufficient at this stage to demonstrate that Plaintiff's state law tort claims fall within an exception to sovereign immunity under § 537.610.1. *See, e.g., Thomas*, 2019 WL 3037200, at *7; *Laird*, 2019 WL 2647273, at *6; *Laney*, 2019 WL 2423308, at *7; *see also Fortenberry v. City of St. Louis*, No. 4:18-CV-01937-JCH, 2019 WL 1242671, at *7 (E.D. Mo. Mar. 18, 2019). The Court will therefore deny the City's motion to dismiss Plaintiff's state law tort claims on the basis of sovereign immunity.

### b. **Official immunity**

Official immunity "protects public officials from liability for injuries arising out of their discretionary acts or omissions, but not from liability in claims arising from their performance of

13

ministerial acts." *Reasonover v. St. Louis Cty., Mo.*, 447 F.3d 569, 585 (8th Cir. 2006) (citation omitted). "[A] police officer's decision to use force in the performance of his duties is discretionary rather than ministerial." *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) (citation omitted). However, "official immunity does not apply to discretionary acts done in bad faith or with malice." *Id.* "Acting with malice requires an actual intent to cause injury." *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017) (citing *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986)). "A finding of bad faith embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive." *Id.*

The Court finds at this stage of the proceedings, Plaintiff's allegations state facts from which it could be reasonably inferred that the Supervisors acted in bad faith or with malice by participating in the kettling, use of pepper spray without warning, and arrest of Plaintiff, who was not engaged in any unlawful activity. *See Newbold*, 2019 WL 3220405, at *8; *Thomas*, 2019 WL 3037200, at *8; *Laird*, 2019 WL 2647273, at *7; *Laney*, 2019 WL 2423308, at *8. Thus, the Supervisors' motion to dismiss on the basis of official immunity will be denied.

### c. Duplicative claims

Defendants argue Plaintiff cannot state a claim for infliction of emotional distress because he has also pleaded an assault claim. This contention has no merit. Under Missouri law, the torts of intentional and negligent infliction of emotional distress are "intended to supplement existing forms of recovery," provided that the elements of such claims are adequately pled. *See Sansonetti v. City of St. Joseph*, 976 S.W.2d 572, 580 (Mo. Ct. App. 1998), *abrogated on other grounds by Delana v. CED Sales, Inc.*, 486 S.W.3d 316 (Mo. 2016). Defendants do not dispute that Plaintiff adequately pled facts in support of the elements of these claims.

14

Likewise, the Court notes "assault and battery are two distinct causes of action." *Devitre v. Orthopedic Ctr. of St. Louis, LLC*, 349 S.W.3d 327, 335 (Mo. 2011). Although Plaintiff may not recover duplicative damages, the Federal Rules of Civil Procedure permits him to plead alternative legal theories. *See* Fed. R. Civ. P. 8(d). Accordingly, Defendants' motion to dismiss these claims for failure to state a claim will be denied.

### d. Punitive damages

In his response in opposition, Plaintiff concedes he is not entitled to punitive damages against the City on his state law claims under Mo. Rev. Stat. § 537.610.3. (ECF No. 36 p. 11) Because Plaintiff's claims against the Supervisors in their official capacities are equivalent to claims against the City itself, Plaintiff is likewise barred from recovering punitive damages from the Supervisors in their official capacities. Thus, the Court will strike Plaintiff's request for punitive damages on his state law claims against the City and against the Supervisors in their official capacities only.

### III. CONCLUSION

For the foregoing reasons, Defendants City and Supervisors' Motion to Dismiss will be denied except as to the § 1983 claim against the City based on a failure to train and supervise, and to the requests for punitive damages on the state law claims that are barred by Missouri statute.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss and Alternative Motion to Strike (ECF No. 34) is **GRANTED in part and DENIED in part**. The motion is **GRANTED** only as to the failure to train and supervise claim in Count IV of the Second Amended Complaint (the remainder of Count IV survives dismissal) and the request for punitive damages on the state law claims against the City of St. Louis and against Gerald Leyshock,

Timothy Sachs, Scott Boyher, Randy Jemerson, Matthew Karnowski, and Brian Rossomanno in their official capacities. The motion to dismiss is otherwise **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' earlier Motion to Dismiss (ECF No. 17) is **DENIED as moot** by the filing of the Second Amended Complaint.

The Court will set this case for a Rule 16 scheduling conference by separate Order.

Dated this 23rd day of September, 2019.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**