UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KEITH ROSE,                                  )
                                             )
               Plaintiff,                    )
                                             )
        v.                                   )        No. 4:18-CV-1568 RLW
                                             )
CITY OF ST. LOUIS, MISSOURI, et al.,         )
                                             )
               Defendants.                   )

## MEMORANDUM AND ORDER

This matter is before the Court once again on a motion to dismiss.  Previously, the Court

granted in part and denied in part Defendants' Motion to Dismiss and Alternative Motion to Strike

Plaintiff's Second Amended Complaint.  Since that ruling, the parties have engaged in discovery

and Plaintiff Keith Rose ("Plaintiff") was allowed to file a Third Amended Complaint, in which

he named a number of new defendants.[1]  Defendant Lt. Col. Gerald Leyshock "and all other

individual named defendants" have filed a motion to dismiss the Third Amended Complaint.  (ECF

No. 117).  Plaintiff filed a Memorandum in Opposition, and the defendants filed a Reply.  For the

reasons set forth below, the Motion to Dismiss is granted in part and denied in part.

---

[1]Plaintiff added the following 52 defendants: Kimberly Allen, Scott Aubuchon, Eric
Bartlett, Ronald Bergmann, Michael Binz, James Buckeridge, Curtis Burgdorf, Matthew Burle,
Joe Carretero, Anthony Caruso, Daniel Chitwood, James Clark, Darnell Dandridge, Charlene
Deeken, Adam Duke, Kelly Fisher, Brandt Flowers, Samuel Gilman, Patrick Haug, Daniel
Howard, John Jones, James Joyner, Bill Kiphart, Robert Lammert, Joe Lankford, Robert
Laschober, Gerald Leyshock, Tom Long, Kyle Mack, Mike Mandle, Christi Marks, Michael
Marks, Michael Mayo, Mark McMurry, Donnell Moore, James Murphy, Dennis Neal, Patricia
Nijkamp, Kenneth Nizick, Lawrence O'Toole, Paul Piatchek, Donald Re, Bradley Roy, Michael
Scego, Daniel Schulte, Timothy Schumann, Brian Seppi, Stephen Slama, Cliff Sommer, Timothy
Turner, Scott Valentine, Charles Wall, Donnell Walters, Scott Weidler, Carolyn Wiener, and
Anthony Wozniak.

## I.      *Procedural Background*

This case is one of several cases filed in this District arising out of the protest activity following the September 15, 2017 verdict in State v. Stockley, No. 16220CR02213-01 (Mo. 22nd. Jud. Cir. Sept. 15, 2017) ("Stockley").  Plaintiff Keith Rose filed this action in 2018, alleging he was illegally "kettled," pepper sprayed, assaulted, and arrested while observing and documenting the protest on September 17, 2017.[2]  He also alleged he was pepper sprayed while he was downtown on September 15, 2017. Plaintiff alleges he was there to see the protests and was filming an officer when he was sprayed.

Plaintiff initially filed suit on September 17, 2018, against the City of St. Louis, Missouri ("City"), six supervising officers – Lieutenant Colonel Gerald Leyshock, Lieutenant Timothy Sachs, Lieutenant Scott Boyher, Sergeant Matthew Karnowski, Sergeant Randy Jemerson, and Sergeant Brian Rossomanno ("Supervisors") – in their individual and official capacities, and five John Does in their individual and official capacities.  Plaintiff filed a 14-count Second Amended Complaint on February 19, 2019, against the City, the Supervisors, Officer Aaron Gaddis, and five John Does.  In his Second Amended Complaint, Plaintiff  alleged civil rights violations under 42 U.S.C. § 1983 including Fourth and Fourteenth Amendment violations for unreasonable seizure against all individual Defendants (Count I); First and Fourteenth Amendment violations for interfering with Plaintiff's rights to freedom of speech and freedom of assembly against all individual Defendants (Count II); conspiracy to deprive civil rights against all Defendants (Count III); municipal liability for failure to train, failure to discipline, failure to supervise, and having a custom of conducting unreasonable searches and seizures and using excessive force against the

---

[2]According to the Third Amended Complaint, "kettling" is a law enforcement tactic in which officers encircle a group of protestors without providing a means of egress. (ECF No. 114 at 17).

City (Count IV); and Fourth and Fourteenth Amendment violations for excessive force against all individual Defendants (Count XII).  Plaintiff also raised the following supplemental state-law claims against all Defendants: assault (Count V); false arrest (Count VI); false imprisonment (Count VII); abuse of process (Count VIII); malicious prosecution (Count IX); intentional infliction of emotional distress (Count X); negligent infliction of emotional distress (Count XI); battery (Count XIII); and malicious trespass of property (Count XIV).

The defendants filed a motion to dismiss the Second Amended Complaint.  The defendants moved to dismiss Plaintiff's Second Amended Complaint for failure to comply with the "short and plain statement" requirement of Fed. R. Civ. P. 8(a).[3]  In addition, the City moved to dismiss Plaintiff's claims of municipal liability under Fed. R. Civ. P. 12(b)(6), arguing Plaintiff failed to allege sufficient facts to state a claim that the City had an unconstitutional policy, custom, or practice and that the City failed to train, discipline, or supervise its police under Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978).  The City also argued Plaintiff's civil conspiracy claims should be dismissed as barred by the intracorporate conspiracy doctrine pursuant to Kelly v. City of Omaha, Neb., 813 F.3d 1070 (8th Cir. 2016).  Additionally, the City argued Plaintiff's state law claims were barred by sovereign immunity, and Plaintiff had not established the requisite waiver.  The City asserted § 537.610.3 of Missouri Revised Statutes precludes the recovery of punitive damages on Plaintiff's state law claims.  The Supervisors moved to dismiss the § 1983 claims in Plaintiff's Second Amended Complaint arguing there is no respondeat superior liability, and they maintained Plaintiff had failed to allege personal participation by the Supervisors in the alleged constitutional violations.  The Supervisors further

---

[3]Alternatively, the defendants moved to strike certain paragraphs of the Second Amended Complaint under Fed. R. Civ. P. 12(f) as immaterial and impertinent.

argued they were entitled to official immunity on Plaintiff's state law claims.  In addition, the City and Supervisors claimed the infliction of emotional distress claims were not actionable because the same facts give rise to another cognizable tort, namely assault, and they asserted the claims alleging battery and assault were duplicative.

In a Memorandum and Order dated September 23, 2019, the Court granted in part and denied in part Defendants' Motion to Dismiss and Alternative Motion to Strike. (ECF No. 44).  As an initial matter, the Court found Plaintiff's Second Amended Complaint met the pleading standard of Fed. R. Civ. P. 8(a).  (Id. at 5-6).  The Court found, with regard to Plaintiff's claim of excessive force, that Plaintiff had adequately alleged direct conduct by the Supervisors and specific facts describing each of the Supervisor's roles in the planning, approval, and execution of the alleged uses of force.  (Id. at 7-8).  The Court declined to extend the intracorporate conspiracy doctrine to Plaintiff's § 1983 conspiracy claims. (Id. at 8-9).  As for Monell liability, the Court found the Second Amended Complaint contained sufficient factual allegations to support the existence of an unconstitutional policy or custom that plausibly caused the alleged constitutional violations.  (Id. at 10-11).  But with respect to Plaintiff's allegations that the City failed to train or supervise St. Louis Metropolitan Police Department ("SLMPD") officers, the Court agreed with Defendants that Plaintiff had failed to allege a viable claim under § 1983 for failure to train or supervise.  (Id. at 11-12).  As for the state law claims, the Court held that Plaintiff had adequately alleged that the City had waived sovereign immunity on state claims pursuant to Mo. Rev. Stat. § 537.610.1.  (Id. at 13).  The Court also found the Second Amended Complaint had adequate allegations to infer that the Supervisors had acted in bad faith or with malice in their conduct that was directed at Plaintiff and, therefore, they were not entitled to dismissal on the basis of official immunity.  (Id. at 14).  The Court further found the argument that Plaintiff's claims of assault and intentional infliction of emotional dismiss were duplicative to be without merit.  Finally, the Court agreed that

Plaintiff was precluded from collecting punitive damages against the City and the Supervisors in their official capacities.  Id. at 15.  In sum, the Court granted Defendants' Motion to Dismiss the Second Amended Complaint only as to the failure to train and supervise claim in Count IV and the request for punitive damages on the state law claims against the City and the Supervisors in their official capacities.  Otherwise, the defendants' motion to dismiss the Second Amended Complaint was denied.

In December 2020, following discovery, which appeared to be focused primarily on the identity of the unnamed officers, the parties moved to amend the Case Management Order and Defendants withdrew their opposition to Plaintiff's motion to file a Third Amended Complaint. The Court granted Plaintiff leave to amend and on December 8, 2020, Plaintiff filed a Third Amended Complaint.

In the Third Amended Complaint, Plaintiff brings the following 15 counts:  Fourth and Fourteenth Amendment violations for unreasonable seizure against Defendant Officers[4] (Count I); First and Fourteenth Amendment violations for interfering with Plaintiff's rights to freedom of speech and freedom of assembly against Defendant Officers (Count II); conspiracy to deprive civil rights against Defendant Officers and Defendant O'Toole (Count III); municipal liability for failure to train, failure to discipline, failure to supervise, and having a custom of conducting

---

[4]In his Third Amended Complaint, Plaintiff defines "Defendant Officers" to mean the Defendants identified in Paragraphs 12-19, meaning Defendants Leyshock, Sachs, Howard, Jemerson, Rossomanno, Burle, Gaddis, and Kiphart, plus the officers listed in Paragraph 17, who include the following: Defendants  Allen, Aubuchon, Boyher, Chitwood, Joyner, Marks, Mayo, Moore, Piatchek, Bartlett, Bergmann, Binz, Buckeridge, Burgdorf, Carretero, Caruso, Clark, Dandridge, Duke, Fisher, Flowers, Gilman, Haug, Jones, Karnowski, Lammert, Lankford, Laschober, Long, Mack, Mandle, Marks, McMurry, Murphy, Neal, Nijkamp, Nizick, Re, Roy, Schulte, Scego, Schumann, Seppi, Slama, Sergeant Cliff Sommer, Sergeant Timothy Turner, Sergeant Scott Valentine, Wall, Walters, Weidler, Wiener, and Wozniak.  Plaintiff labels the officers in Paragraph 17 as "Supervisor Officers."  (ECF No. 114 at 6-7).

unreasonable searches and seizures and using excessive force against the City (Count IV); assault against Defendant Officers (Count V); false arrest against Defendant Officers (Count VI); abuse of process against Defendant Officers and Defendant O'Toole (Count VII); malicious prosecution against Defendant Officers and Defendant O'Toole (Count VIII); intentional infliction of emotional distress against Defendant Officers (Count IX); negligent infliction of emotional distress against Defendant Officers (Count X); vicarious liability under the City Charter against Defendants O'Toole and Deeken (Count XI); Fourth and Fourteenth Amendment violations for excessive force against Defendant Officers (Count XII); Fourth and Fourteenth Amendment violations for failure to intervene in use of excessive force against Defendant Officers and Defendant O'Toole (Count XIII); battery against Defendant Officers (Count XIV); and malicious trespass of property against Defendant Officers (Count XV).

The individual defendants move to dismiss Plaintiff's Third Amended Complaint for failure to state a claim. They also move to dismiss Plaintiff's § 1983 claims (Counts I, II, XII, and XIII) based on qualified immunity, arguing Plaintiff failed to state a plausible claim that each and every defendant violated Plaintiff's clearly established rights. The individual defendants also argue Plaintiff's state law claims are barred by official immunity, and the intracorporate conspiracy doctrine bars Plaintiff's conspiracy claim (Count III). Lastly, defendants O'Toole and Deeken contend the Court should decline to exercise supplemental jurisdiction over Plaintiff's City Charter claim.

Other judges in this District have recently addressed the same or similar arguments on motions to dismiss in protest cases involving kettling on the same evening. See Ziegler v. City of St. Louis, Mo., No. 4:18-CV-1577 JAR, 2021 WL 4459747, at *1 (E.D. Mo. Sept. 29, 2021); Thomas v. City of St. Louis, Mo., No. 4:18-CV-1566 JAR, 2021 WL 4459734, at *1 (E.D. Mo. Sept. 29, 2021); Robertson v. City of St. Louis, Mo., No. 4:18-CV-1570 JAR, 2021 WL 4459728,

at *1 (E.D. Mo. Sept. 29, 2021); <u>Laird v. City of St. Louis, Mo.</u>, No. 4:18-CV-1567 AGF, 2021 WL 4459705, at *1 (E.D. Mo. Sept. 29, 2021); <u>Gullet v. City of St. Louis, Mo.</u>, No. 4:18-CV-1571 JCH, 2021 WL 4459697, at *1 (E.D. Mo. Sept. 29, 2021); <u>Nelson v. City of St. Louis, Mo.</u>, No. 4:18-CV-1561 JCH, 2021 WL 4399481, at *1 (E.D. Mo. Sept. 27, 2021); <u>Davis v. City of St. Louis, Mo.</u>, No. 4:18-CV-1574 HEA, 2021 WL 4148331, at *1 (Sept. 13, 2021); <u>Newbold v. City of St. Louis, Mo.</u>, No. 4:18-CV-1572 HEA, 2021 WL 4061066, at *1 (E.D. Mo. Sept. 7, 2021) (*appeal filed)*; <u>Ortega v. City of St. Louis, Mo.</u>, No. 4:18-CV-1576 DDN, 2021 WL 3286703, at *1 (E.D. Mo. Aug. 2, 2021); <u>Street v. O'Toole</u>, No. 4:19-CV-2590 CDP, 2021 WL 677909, at *1 (E.D. Mo. Feb. 22, 2021); <u>Baude v. City of St. Louis, Mo.</u>, No. 4:18-CV-1564 RWS, 476 F.Supp.3d 900 (E.D. Mo. 2020) (*appeal filed*).   The allegations in these complaints are substantially similar to those in the case at bar.

## II.   Factual Allegations

This case stems from public protests following the acquittal of Officer Jason Stockley after a bench trial on the charge of first-degree murder in the Circuit Court of the City of St. Louis, Missouri.  The protests concerned not only the <u>Stockley</u> verdict but also broader issues in the St. Louis community, including concerns of racism in the criminal justice system and the use of force by white police officers against Black citizens.

A.    **General Allegations**[5]

Following the announcement of the Stockley verdict on September 15, 2017, public protests began at multiple locations around the City and continued for several days. Although most of the protests were non-violent, SLMPD officers "amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields and carrying chemicals." (ECF No. 114 at 8-7). Plaintiff alleges the response to these protests was motivated by anger, and that the acting Chief of Police, Lt. Col. Lawrence O'Toole, Defendants Leyshock, Sachs, Rossomanno, Jemerson, Boyher, Karnowski and other supervisors made plans to terrorize the protestors and to deter free speech and assembly.  Plaintiff further alleges that Defendant Officers "intentionally concealed their identities using military-like tactical dress and masks, making it exceedingly difficult to identify which [ ] officer arrested, beat and/or used chemical munition on [ ] Plaintiff." (Id. at 3).

On Sunday, September 17, 2017, there were peaceful protests in the downtown St. Louis area during the day and early evening.  Between 8:00 p.m. and 9:00 p.m., a handful of individuals broke windows and destroyed flowerpots on the 900, 1000, and 1100 blocks of Olive Street in downtown St. Louis.  (Id. at 13).  SLMPD arrested a number of individuals for vandalism.  Plaintiff was not involved in this vandalism in any way.

---

[5] Plaintiff makes several allegations regarding other federal court proceedings against the SLMPD and its officers, including entry of a consent decree in 2015 in Templeton v. Dotson, No. 4:14-CV-2019, 2015 WL 13650910, at *3 (E.D. Mo. Dec. 11, 2014), and a Memorandum and Order of Preliminary Injunction dated November 15, 2017 in Ahmad v. St. Louis, No 4:17-CV-2455 CDP (E.D. Mo. Nov. 15, 2017).  Plaintiff also makes several allegations regarding the events that led up to the events on the evening on September 17, 2017, and violence inflicted on other individual protestors by members of SLMPD.  As the Court has stated in its previous orders, it will consider these allegations only to the extent they are relevant to the claims of this individual plaintiff.

Around 8:45 pm, the small number of protesters remaining in the area were ordered to disperse.  A second dispersal order was given at 8:51 p.m.  Defendants Rossomanno and Jemerson directed people to the intersection of Washington Avenue and Tucker Boulevard ("Washington and Tucker").

Over the next two hours, SLMPD officers began blocking roads and directing civilians to the intersection of Washington and Tucker.  Defendant Sachs came up with the plan to arrest everyone present.  He presented his plan to Defendant Leyshock, who approved the plan.  (Id. at 14).  Plaintiff alleges Defendants Leyshock, Sachs, Rossomanno, and Jemerson knew or should have known that their plan to kettle the people who had been directed into the intersection of Washington and Tucker and arrest them "merely for being present," would "result in arrests without probable cause and the unjustified just of force to effectuate said arrests."  (Id. at 14-15).  Plaintiff also alleges that the "Supervisor Officers" in paragraph 17 "were an integral part of the kettling and subsequent use of excessive force because they directed their subordinates to participate in the kettle and unlawfully seize Plaintiff and other citizens arrested that night."  (Id. at 15).

**B.     Allegations Specific to Plaintiff**

On September 15, 2017, at approximately 1:00 p.m., following the announcement of the verdict in Stockley, Plaintiff went to downtown St. Louis.  While he was there, at 5:17 p.m., Plaintiff used his mobile phone to record Defendant Bill Kiphart, who at the time was a lieutenant with SLMPD.  Without warning, order of dispersal, or announcement of unlawful assembly, Defendant Kiphart sprayed Plaintiff with a chemical agent to deter plaintiff from recording him.  Plaintiff was not engaged in any illegal activity at the time.  Plaintiff experienced a burning sensation on his skin from the chemical spray and decided to leave to shower.  (Id. at 32).

On September 17, 2017, around 9:00 p.m., Plaintiff went to downtown St. Louis to document police interactions with protestors.  At 9:28 p.m., Plaintiff observed Defendant Rossomanno declare an unlawful assembly, order dispersal, and warn of the use of chemical munitions at Washington and Tucker.  Defendant Rossomanno told Plaintiff and others to walk west on Washington.  Plaintiff and the group complied, but they were met by other officers who told the group that they could not walk in that direction.  Plaintiff turned north on Tucker.  Plaintiff heard SLMPD officers demand that civilians stand four to five feet away from the police line. Plaintiff complied with the officers' orders.  Plaintiff heard no other dispersal orders that evening. (Id. at 33-34).

Plaintiff walked to the intersection of Olive Boulevard and Ninth Street, where he stood from approximately 10:20 p.m. to 10:50 p.m.  Around 10:50 p.m., Plaintiff walked west on Olive Boulevard to Tucker and then north on Tucker to between St. Charles Street and Washington. Plaintiff stood on the sidewalk on Tucker for about ten minutes.  Plaintiff heard no announcements. At around 11:15 p.m., police in riot gear started walking toward Plaintiff from the south, blocking Tucker and its sidewalks.  At the same time, a second set of police officers on bicycles blocked Washington and its sidewalks east of Tucker.  A third set of police officers in riot gear blocked the street and sidewalks across Tucker north of Washington and began advancing toward Washington. And a fourth set of police officers in riot gear moved east on Tucker toward Washington, trapping Plaintiff and others in on all four sides; in other words, kettling them.  Defendant Rossomanno told Plaintiff that the civilians had been warned and "now everyone present was going to jail."  (Id. at 34).

Plaintiff was instructed to get to the ground.  He was also instructed by officers to stop using his phone to record.  Plaintiff complied with the order to get to the ground, and he attempted to sit.  Despite his compliance, Defendant Kiphart "doused" him with pepper spray from a large

10

container of capsaicin spray at a distance of no more than five feet.  There was no warning prior to the spray.  (Id. at 35).  Defendant Burle also doused Plaintiff with pepper spray from a large container of capsaicin spray at a distance of no more than five feet.  There was no warning before the spray and no reason given as to why he was sprayed.  (Id.).

Two unidentified SLMPD officers roughly zip-tied Plaintiff, and a third unidentified SLMPD officer sprayed him with pepper spray "from point blank range."  (Id. at 35).  Defendant Gaddis and a fourth unidentified SLMPD officer picked Plaintiff up by his zip-tied wrists and lined him up against a building.  (Id. at 35-36).  Another unidentified officer patted him down, removed Plaintiff's iPhone from his pocket, and slammed the phone to the ground, destroying it.  Defendant Boyher approached Plaintiff while he was seated on the ground next to the wall.  (Id. at 36).  Defendant Boyher "harassed" Plaintiff and threatened him by stating, "I've looked into you."  Defendant Boyher also revealed personal details of Plaintiff's life.  (Id.)

Plaintiff "was given into the custody" of Defendant Gaddis, who took a photo with Plaintiff and listed himself as Plaintiff's arresting officer.  (Id.)  Plaintiff was then transported to the St. Louis City Justice Center and held for approximately 15 hours, with no medical attention provided for the pain and burning from the pepper spray.  Plaintiff claims he complied with all directives from SLMPD officers and was not engaged in unlawful activity at any time during the police encounter.

Plaintiff alleges Defendant O'Toole was the acting Chief of Police and Charlene Deeken was the Director of Public Safety for the City of St. Louis.  Plaintiff alleges Defendants O'Toole and Deeken were responsible for all management and direction of the SLMPD.  Defendant Leyshock was a lieutenant colonel, and on September 17, 2017, he was incident commander directing all of the supervisors, including the other named defendants.  Defendant Sachs had the rank of lieutenant during the events of September 17, 2017.  According to Plaintiff, he brought

11

SLMPD's Civil Disobedience Team to the scene of the mass arrest and was in direct command of the officers in tactical gear.  Defendant Sachs also ordered the use of chemical agents.  Defendant Howard had the rank of major, and on the night of the incident, he was commander of the South Patrol.  Plaintiff alleges Defendant Howard assisted Defendant Leyshock is planning the kettling and mass arrest.  Defendants Jemerson and Rossomanno had the rank of sergeant and were supervisors on the ground with the SLMPD Civil Disobedience Team on the night of the incident.  According to Plaintiff, Defendants O'Toole, Leyshock, Sachs, Howard, Jemerson, and Rossomanno knew or should have known that there was no probable cause for the arrest of pf plaintiff and there was no legal justification to use force against him.

Plaintiff further alleges that during and after the arrests, SLMPD officers "were observed high fiving each other, smoking celebratory cigars, taking selfies on their personal phones with arrestees against the arrestees' will, and chanting 'Whose Streets? Our Streets!'"  (Id. at 20).

### III.    Legal Standard

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Blomker v. Jewell, 831 F.3d 1051, 1055 (8th Cir. 2016) (quotation omitted). The facts alleged must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  A complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief.  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

12

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Id. at 555–56; Fed. R. Civ. P. 8 (a)(2). The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, however. Iqbal, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id.

## IV.    Discussion

### A.    Documents outside the pleadings

Defendants urge the Court to go outside the pleadings and examine exhibits that were attached to the Second Amended Complaint, namely testimony from witnesses during a preliminary injunction hearing held before the Honorable Catherine D. Perry in Ahmad, et al. v . City of St. Louis, Mo., 4:17-CV-2455 CDP (E.D. Mo.).  Plaintiff attached the hearing transcript to his Second Amended Complaint, but not to the Third Amended Complaint.  Defendants argue that the transcript is a public record of which the Court can take judicial notice.  Defendants also argue Plaintiff continues to rely on the decision in Ahmad and, therefore, it is appropriate for the Court to consider the testimony found in the transcript.

Ordinarily, only the facts alleged in the complaint are considered in ruling on a 12(b)(6) motion, but materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  The Third Amended Complaint wholly supplants the Second Amended Complaint and, therefore, exhibits that were attached to the Second Amended Complaint are no longer part of the pleadings and should not be considered on a motion to dismiss.  "When a plaintiff files an amended complaint,

13

the original complaint is superseded and has no legal effect." Thomas v. United Steelworkers Loc. 1938, 743 F.3d 1134, 1139 (8th Cir. 2014); see also Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016) ("[W]hen [plaintiff] filed the second amended complaint, the first amended complaint (and its attached exhibits) became a legal nullity.").

However, a court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." Miller v. Redwood Toxicology Lab'y, Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012). The transcript from the preliminary injunction hearing in Ahmad is a public record, and the Court may take judicial notice that the hearing occurred, and testimony was offered by Plaintiff and some of the defendants in this case. The Court cannot, however, accept as true the content of the testimony. Lustgraaf v. Behrens, 619 F.3d 867, 885–86 (8th Cir. 2010) (when deciding a motion to dismiss, a district court may take judicial notice of a public document for the purpose of determining what statements the document contains, but not to prove the truth of the document's contents). As Plaintiff points out, the testimony from the Ahmad hearing reflects disputes of material facts at issue in this case.

This Court agrees with the other judges in this District who have held they will not consider exhibits attached to earlier complaints. See Robertson, 2021 WL 4459728, at *4; Laird, 2021 WL 4459705, at *4; Nelson, 2021 WL 4399481, at *4; Davis, 2021 WL 4148331, at *5; Ortega, 2021 WL 3286703, at *8-9.

**B.    Claims against the "Supervising Officers"**

Defendants move to dismiss the Supervising Officers, i.e., those named in Paragraph 17 of the Third Amended Complaint. Defendants maintain that aside from Defendants O'Toole, Leyshock, Sachs, Howard, Boyher, Karnowski, Rossomanno, and Jemerson, who are alleged to have specific supervisory roles, and Kiphart, Burle, and Gaddis, who are alleged to have had direct contact with Plaintiff, none of the other defendants in the Third Amended Complaint are alleged

14

to have had direct contact with Plaintiff, "nor is it alleged that any of the specific misconduct of the officers who did make contact with Plaintiff was of sufficient duration or within proximity to allow any other individual defendant to act to prevent any mistreatment of Plaintiff." (ECF No. 118 at 2).

As for the "Supervisor Officers" listed in Paragraph 17, Plaintiff alleges they "were an integral part of the kettling and subsequent use of excessive force because they directed their subordinates to participate in the kettle and unlawfully seize Plaintiff and other citizens arrested that night."[6]  (ECF No. 114 at 15).  Plaintiff also alleges "Supervisor Officers" directed bicycle officers to jab people using their bicycles.  (Id. at 17).  "Rather than defuse the situation, many of the Supervisor Officers directed the officers under their command to use force against the peacefully assembled people and supervised the unlawful arrests.  The other Supervisor Officers made no attempts to stop the illegal use of force and the unlawful arrests."  (Id.)

Plaintiffs are required to plead direct, personal involvement in constitutional misconduct in order to state a claim under 42 U.S.C. § 1983: "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 677.  Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990).  Because liability for damages under § 1983 is personal, "each defendant's conduct must be independently assessed. Section 1983 does not sanction tort by association."  Smith v. City of Minneapolis, 754 F.3d 541, 547–48 (8th Cir. 2014) (citing Heartland Acad. Cmty. Church v. Waddle, 595 F.3d 798, 805–06 (8th Cir. 2010)

---

[6]Defendants Boyher and Karnowski are included in Paragraph 17 as "Supervisor Officers," but in the Third Amended Complaint, there are specific allegations regarding their supervisory roles in overseeing the kettling, arrests, and use of excessive force.  The Court considers these two defendants to be outside of the general group of "Supervisor Officers" in Paragraph 17.

(citation and internal quotation marks omitted)); see also S.M. v. Krigbaum, 808 F.3d 335, 340 (8th Cir. 2015).

> Faced with a similar argument in related case, Judge Perry wrote:

> Defendants cannot be held liable merely because they were employed by the SLMPD on the night some members of that department may have violated plaintiffs' rights—liability under § 1983 requires proof of a causal link between each defendant and the specific wrongs that defendant committed. Put differently, asserting broad, sweeping allegations that a group of defendants committed constitutional misconduct is not sufficient to satisfy plaintiffs' pleading obligations as to each defendant within that group. Absent specific and plausible factual allegations, plaintiffs' claims are merely legal conclusions couched as factual allegations. Moreover, plaintiffs' vague allegations fail to provide each defendant with fair notice of what the claim is and the grounds upon which it rests.

Street, 2021 WL 677909, at *4–5 (internal citations omitted).  See also Crew v. Minor, No. 2:18-CV-27 CAS, 2018 WL 4922218, at *8 (E.D. Mo. Oct. 10, 2018) (dismissing § 1983 claim asserted against a group of police officers where plaintiff failed to specify each defendants' direct responsibility), cf. Burbridge v. City of St. Louis, Mo., 2 F.4th 774, 782 (8th Cir. 2021) (affirming district court's finding it was not fatal to the plaintiff's case that he could not identify which individual officers "landed the blows," where there was no dispute that each of the officers participated in the arrest and use of force).

Like other judges in this District who have addressed similar issues in the Stockley kettling cases, this Court will dismiss without prejudice the individual defendants against whom no specific allegations are made.  See Robertson, 2021 WL 4459728, at *4; Laird, 2021 WL 4459705, at *4. There are specific allegations regarding Defendants O'Toole, Leyshock, Sachs, Howard, Rossomanno, Jemerson, Boyher, and Karnowski, who are alleged to have specific supervisory roles in the kettling and implementing the excessive use of force, and Defendants Kiphart, Burle, and Gaddis, who are alleged to have had direct contact with Plaintiff.  The Court will subsequently

refer to these defendants as the "Remaining Defendants."   The Court dismisses all other defendants, without prejudice, for failure to state a claim, and does not discuss them further.

### C.    Qualified Immunity

Remaining Defendants argue the Court should dismiss on qualified immunity grounds Plaintiff's § 1983 claims in the Third Amended Complaint based on unlawful seizure, interference with first amendment rights, excessive force, and failure to intervene, (Counts I, II, XII, and XIII) because Plaintiff does not state a plausible claim that the Remaining Defendants violated Plaintiff's clearly established constitutional rights.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Officials are entitled to qualified immunity "unless (1) the evidence, viewed in the light most favorable to the plaintiffs, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation, such that a reasonable officer would have known that his actions were unlawful." Bernini v. City of St. Paul, 665 F.3d 997, 1002 (8th Cir. 2012). Qualified immunity serves to protect "all but the plainly incompetent or those who knowingly violate the law." Franklin ex rel. Franklin v. Peterson, 878 F.3d 631, 635 (8th Cir. 2017).  Officers are allowed considerable room for mistaken judgments.

To be clearly established, the contours of the right must be sufficiently clear that a reasonable official would have understood that what he was doing violates that right.  Quraishi v. St. Charles Cnty., Mo., 986 F.3d 831, 835 (8th Cir. 2021) (citation omitted). The state of the law at the time of the alleged violation – articulated by precedent, controlling authority, or a robust consensus of persuasive authority – must give officials "fair warning" that their conduct was

unlawful. Id. There may also be the rare obvious case where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances. Id.

      *1.    Unlawful seizure – Counts I and II*

In Counts I and II of his Third Amended Complaint, Plaintiff alleges the defendants violated his First, Fourth, and Fourteenth Amendment rights by unlawfully arresting Plaintiff and interfering with his right to freedom of speech and freedom to assemble.

To prevail on his First and Fourth Amendment claims, Plaintiff must show that the defendants had no probable cause for their actions. Quraishi, 986 F.3d at 836.  To receive qualified immunity, the Remaining Defendants need only establish "arguable probable cause," which exists even where an officer has a mistaken but objectively reasonable belief that Plaintiff committed a criminal offense.  Id. See also Borgman v. Kedley, 646 F.3d 518, 522–23 (8th Cir. 2011). "Probable cause to make a warrantless arrest exists 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'"  Ulrich v. Pope Cnty., 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting Borgman, 646 F.3d at 523).  In the context of a mass arrest, the Fourth Amendment requires that "the officers have grounds to believe all arrested persons were a part of the unit observed violating the law." Bernini, 665 F.3d at 1003 (8th Cir. 2012).

The Honorable John A. Ross wrote the following in addressing this exact issue:

> Defendants contend they had arguable probable cause to believe Plaintiff was acting as part of a unit to violate the law based on reports that a large crowd was milling about the intersection of Tucker and Washington impeding traffic; the crowd included persons wearing masks and goggles suggestive of intentions to confront and resist police; the crowd also included persons who had been involved in disorderly activity downtown over the previous several hours, ignored orders to disperse and some members had assaulted or threatened officers earlier; and that similar crowds had resorted to violence on two previous nights.  Defendants urge the Court to follow Burbridge v. City of St. Louis, 430 F. Supp. 3d 595 (E.D. Mo.

18

2019), a case arising from the same incident which held that police had probable cause to believe the plaintiffs were part of a unit observed violating the law.  There, the court found that officers had declared the area an unlawful assembly, issued multiple dispersal orders to the crowd, and then arrested those who refused to follow the lawful commands of the officers. Id. at 610.

Thomas, 2021 WL 4459734, at *1 (finding no probable cause alleged and declining to follow Burbridge, 430 F.Supp.3d 595).

To date, five judges from this District deciding motions to dismiss in Stockley protest cases have declined to follow Judge Stephen N. Clark's decision in Burbridge. See Robertson, 2021 WL 4459734, at *5-6 (Ross, J.); Laird, 2021 WL 4459705, at *6 (Fleissig, J.); Nelson, 2021 WL 4459697, at *11 (Hamilton, J.); Davis, 2021 WL 4148331, at *6 (Autrey, J.); Ortega, 2021 WL 3286703, at *11 (Noce, J.).  All have noted that the procedural posture of Burbridge, decided on a motion for summary judgment with proffered evidence, differs significantly from cases at the motion to dismiss stage.

In deciding the instant motion, the Court must only consider the allegations in Plaintiff's Third Amended Complaint.  In Burbridge, the undisputed facts included evidence that rocks and other objects were being thrown from the crowd at the officers; and the officers gave dispersal orders through a public address system, which were ignored.  Burbridge, 430 F.Supp.3d at 605. In other words, there was evidence the crowd was committing crimes as a unit, like the crowd in Bernini v. City of St. Paul, where the crowd chanted and waived signs and flags together, threw objects at officers, and ignored dispersal orders.  665 F.3d at 1002.

Here, the Third Amended Complaint here does not include similar allegations.  There are allegations that Plaintiff and others were acting peacefully, that they were following the officers' orders, and at times had their hands up.  Many protestors, including Plaintiff, asked the officers if they could leave, but they were blocked from doing so.  Further, the Third Amended Complaint alleges the officers arrested everyone present.  Unlike the officers in Bernini, there were no

19

allegations that the officers in this case attempted to determine which individuals were part of a unit acting unlawfully, and which were swept up incidentally.   While the Third Amended Complaint alleges some vandalism did occur in downtown St. Louis hours before the mass arrest, and officers ordered that group to disperse, there are no allegations that the group did not disperse or that those individuals continued to vandalize property.  Taking Plaintiff's allegations as true and construing all reasonable inferences in his favor, the Court finds the officers present could not have reasonably concluded that the crowd at the intersection of Tucker and Washington was acting as a unit or that every person was violating the law.

As other judges have noted, the factual allegations in this case more closely align with those in Baude v. City of St. Louis, 476 F.Supp.3d 900 (E.D. Mo. 2020) (finding allegations concerning same kettling event on September 17, 2017, sufficient to preclude qualified immunity on the plaintiff's unlawful seizure claims).   This Court agrees.  Plaintiff's allegations do not indicate the Remaining Defendants had probable cause to arrest Plaintiff, and it was clearly established at the time of the mass arrest on September 17, 2017, that to conduct a mass arrest, officers must have probable cause the group is committing a crime and acting as a unit.  The Third Amended Complaint alleges they did not.

There are allegations that Defendants O'Toole, Leyshock, Howard, and Sachs planned and orchestrated the mass arrest despite the lack of probable cause.  These defendants are not entitled to qualified immunity.  See Robertson, 2021 WL 4459734, at *6; Laird, 2021 WL 4459705, at *6; Nelson, 2021 WL 4459697, at *11; Davis, 2021 WL 4148331, at *6; Ortega, 2021 WL 3286703, at *11.

As for Defendants Jemerson, Rossomanno, Boyher, and Karnowski's argument that they are entitled to qualified immunity because they were acting on the orders of their supervisors, the same argument was raised in the related cases arising from the mass arrests at Washington and

Tucker, and the judges in this District have uniformly rejected it.  See Robertson, 2021 WL 4459734, at *6; Laird, 2021 WL 4459705, at *6; Nelson, 2021 WL 4459697, at *11; Davis, 2021 WL 4148331, at *6; Ortega, 2021 WL 3286703, at *12.  The Eighth Circuit has held that an officer may rely on an assurance of probable cause from another officer so long as that reliance is objectively reasonable.  See Bell v. Neukirch, 979 F.3d 594, 609 (8th Cir. 2020); Ehlers v. City of Rapid City, 846 F.3d 1002, 1010 (8th Cir. 2017).  Based on Plaintiff's allegations, it would have been unreasonable for these officers, and officers **Kiphart, Burle, and Gaddis, who are alleged to have had direct contact with Plaintiff,** to rely on the assurance of their superiors that the crowd was not dispersing.  The Court finds the Remaining Defendants are not entitled to qualified immunity as to Counts I and II.

## 2. *Excessive force – Counts XII and XIII*

In Count XII of his Third Amended Complaint, Plaintiff asserts a claim under § 1983 for a violation of his right to be free from excessive force under the Fourth and Fourteenth Amendments.  While Count XII is brought against the "all Defendant Officers" for using excessive force, the factual allegations state that Defendants Kiphart, Burle, and an unknown officer sprayed him with pepper spray, and Defendant Gaddis and an unknown officer forcibly picked him up by his zip-tied wrists.  In Count XIII, Plaintiff asserts a claim for failure to intervene against Defendant O'Toole and the individual defendants who did not participate in but witnessed specific acts of excessive force.

The Remaining Defendants argue they are entitled to dismissal on the basis of qualified immunity because (1) Plaintiff does not allege the supervisory officers knew other officers were using excessive force and, if they did know, it was reasonable for them to believe said force was necessary; and (2) it was not clearly established that the use of pepper spray, tight handcuffing,

arm twisting, or the brief dragging of an arrestee constituted anything more than a de minimis use of force.

"To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009). The Court considers the claim from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. "Circumstances relevant to the reasonableness of the officer's conduct include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal citations and quotation marks omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97.

At the time of the events in question, it was "clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." Brown, 574 F.3d at 499. It was also clearly established that it is unreasonable to use pepper spray on a non-resisting, non-fleeing individual suspected of a non-violent misdemeanor. Tatum v. Robinson, 858 F.3d 544, 548-50 (8th Cir. 2017); see also Johnson v. Carroll, 658 F.3d 819, 827–28 (8th Cir. 2011) (holding that defendants' actions in pepper spraying and throwing a non-violent, non-threatening suspected misdemeanant to the ground were unlawful). Finally, it was clearly established that "the use of . . . gratuitous

22

force against a suspect who is handcuffed, not resisting, and fully subdued is objectively unreasonable under the Fourth Amendment." Krout v. Goemmer, 583 F.3d 557, 566 (8th Cir. 2009); Blazek v. City of Iowa City, 761 F.3d 920, 925 (8th Cir. 2014) (holding it was clearly established that jerking a non-resisting and handcuffed detainee up by the arms with sufficient force to injure his shoulder was "[a] gratuitous and completely unnecessary act of violence [that] violates the Fourth Amendment") (internal citation omitted).

In light of this precedent, it was not objectively reasonable for Defendants Kiphart and Burle to spray Plaintiff with pepper spray, and for Defendant Gaddis to forcibly pick up Plaintiff by his zip-tied wrists when Plaintiff was being detained for non-violent misdemeanors and/or was not fleeing, posing a threat to anyone, or resisting arrest in any way.[7] See Robertson, 2021 WL 4459728, at *7; Laird, 2021 WL 4459705, at *9; Nelson, 2021 WL 4399481, at *13; Davis, 2021 WL 4148331, at *9; Ortega, 2021 WL 3286703, at *13-14; see also Street, 2021 WL 677909, at *6; Baude, 476 F.Supp.3d at 914.

Further, Plaintiff has alleged that supervisory officers Leyshock, Howard, Sachs, Jemerson, Rossomanno, Boyher, and Karnowski were present at the mass arrest and either ordered these uses of excessive force or witnessed officers using excessive force and failed to intervene. With respect to Defendant O'Toole, Plaintiff alleges that during the kettling event, "Defendant O'Toole was using Real Time Crime Center cameras to monitor the unlawful mass arrest and could

---

[7]It is not entirely clear from the Third Amended Complaint whether Plaintiff is alleging excessive use of force based on the kettling itself or applying zip cuffs too tightly. To the extent that he is, Defendants would be entitled to qualified immunity. The undersigned agrees with other judges in this District that it was not clearly established at the time of the events that kettling detainees, which does not itself involve the use of force, or applying zip cuffs too tightly, rises to the level of excessive force. See Laird, 2021 WL 4459705, at *9; Ortega, 2021 WL 3286703, at *14; Davis, 2021 WL 4148331, at *9; see also Chambers v. Pennycook, 641 F.3d 898, 907 (8th Cir. 2011) ("Handcuffing inevitably involves some use of force, and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied.") (internal citations omitted).

see the excessive force being deployed on Plaintiff and other citizens.  At all times, Defendant O'Toole had the ability to intervene and order the other officers to cease with the unconstitutional arrest and use of excessive force on Plaintiff and other citizens."  (ECF No. 144 at 55).  These allegations are sufficient to state a claim against these supervisory defendants.  See Wagner v. Jones, 664 F.3d 259, 275 (8th Cir. 2011) ("The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see."). The Eighth Circuit held that, as of June 2007, it was clearly established that "an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment."  Nance v. Sammis, 586 F.3d 604, 612 (8th Cir. 2009).

Accordingly, the Remaining Defendants are not entitled to qualified immunity on Counts XII and XIII.  On a motion to dismiss, Plaintiff's allegations are sufficient to hold these supervisory officers liable and deny qualified immunity.  See Laird, 2021 WL 4459705, at *9; Baude, 476 F.Supp.3d at 913–13; Street, 2021 WL 677909, at *5-6; Ortega, 2021 WL 3286703, at *14; Davis, 2021 WL 4148331, at *9.

### D.      Section § 1983 Civil Conspiracy Claim

Plaintiff claims in Count III of the Third Amended Complaint that the defendant officers and Defendant O'Toole engaged in a civil conspiracy to deprive Plaintiff of his constitutional rights by designing, implementing, and executing an illegal kettling plan with the intent to unlawfully arrest and use excessive force on Plaintiff.  (ECF No. 114 at 39-42).  The defendants previously moved to dismiss Plaintiff's § 1983 Conspiracy to Deprive Civil Rights claim based on the intracorporate conspiracy doctrine, in that the defendant officers are all part of SLMPD, and as such they cannot conspire against themselves.  In its Memorandum and Order dated August 23, 2019, the Court ruled that Plaintiff stated a claim of § 1983 civil conspiracy, and that the intracorporate conspiracy doctrine did not apply.  (ECF No. 44 at 8-9).  In the motion at bar, the

24

defendants argue, once again, that the doctrine applies.  They also argue they are entitled to qualified immunity due to the unsettled state of the law regarding intracorporate conspiracies and § 1983.

At this stage in the proceedings, the Court finds Plaintiff continues to state a claim of § 1983 civil conspiracy, and the Court declines to revisit its earlier ruling that the intracorporate conspiracy doctrine does not apply to § 1983 conspiracy claims.  See, e.g., Street, 2021 WL 677909, at *8 (denying motion to dismiss § 1983 conspiracy claim based on intracorporate conspiracy doctrine); Newbold, 2019 WL 3220405, at *6 (same and collecting cases); Aldridge v. City of St. Louis, No. 4:18-CV-1677-CAS, 2019 WL 1695982 at *8 (E.D. Mo. Apr. 17, 2019) (same).

As for the issue of qualified immunity, the intracorporate conspiracy doctrine is a defense. As Judge Perry has stated,

> The Eighth Circuit has consistently recognized § 1983 conspiracy claims against police officers from the same police department if those police officers conspire to violate clearly established constitutional rights.  See, e.g., Small v. McCrystal, 708 F.3d 997, 1010 (8th Cir. 2013) (affirming the denial of qualified immunity in a § 1983 conspiracy claim against two police officers alleged to have conspired to fabricate reports seeking arrest warrants); S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs, 725 F.3d 843, 852-54 (8th Cir. 2013) (affirming the denial of qualified immunity in a § 1983 conspiracy claim against SLMPD officers alleged to have conspired to prevent plaintiff from filing a § 1983 claim following her false arrest).  Accordingly, on September 17, 2017, a reasonable SLMPD officer would have known that he or she could be subjected to § 1983 conspiracy liability by conspiring with other SLMPD officers to violate plaintiffs' clearly established constitutional rights.

Street, 2021 WL 677909, at *8.  The Court agrees with this reasoning and denies the Remaining Defendants' motion to dismiss Count III on the basis of qualified immunity.  Street, 2021 WL 677909, at *8 (finding defendants were not entitled to qualified immunity on Plaintiff's § 1983 conspiracy claim by virtue of the intracorporate conspiracy doctrine); Gullet, 2021 WL 4459697, at *9 (same); Ortega, 2021 WL 3286703, at *15 (same); Davis, 2021 WL 4148331, at *10 (same),

but see Robertson, 2021 WL 4459728, at *9 (granting qualified immunity on the § 1983 civil

conspiracy claim); Laird, 2021 WL 4459705, at *10 (same); Baude, 476 F.Supp.3d at 913 (same).

> ### E.   State Law Claims

In the Third Amended Complaint, Plaintiff raises state law claims for assault (Count V),

false arrest (Count VI), abuse of process (Count VII), malicious prosecution (Count VIII),

intentional infliction of emotional distress (Count IX), negligent infliction of emotional distress

(Count X), battery (XIV), malicious trespass of property (Count XV), and vicarious liability under

the City Charter (Count XI).  The Remaining Defendants move to dismiss all of these claims based

on a number of legal theories.

> #### 1.   Official immunity

The Remaining Defendants move to dismiss Plaintiff's state-law claims on the basis of

official immunity.  In their memorandum in support of their motion to dismiss they assert the

following with regard to official immunity: "all of the state law claims on their face are either

insufficient or barred by official immunity, notwithstanding Plaintiff's boilerplate allegations of

malice or bad faith, essentially for the same reasons as advanced in support of qualified immunity

above."  (ECF No. 118 at 13) (citing State ex rel. Alsup v. Kanatzar, 588 S.W.3d 187 (Mo. 2019)

(en banc), and Edwards v. McNeill, 894 S.W.2d 678 (Mo. Ct. App. 1995)).  They provide neither

additional arguments nor legal analysis in support of their motion to dismiss on the basis of official

immunity.

In their prior motion to dismiss, the defendants also moved to dismiss Plaintiff's state law

claims on the basis of official immunity.  In its Memorandum and Order dated August 23, 2019,

the Court wrote:

> The Court finds at this stage of the proceedings, Plaintiff's allegations state facts
> from which it could be reasonably inferred that the Supervisors acted in bad faith
> or with malice by participating in the kettling, use of pepper spray without warning,

and arrest of Plaintiff, who was not engaged in any unlawful activity. … Thus, the
Supervisors' motion to dismiss on the basis of official immunity will be denied.

(ECF No. 44 at 13-14) (citation omitted).  There is nothing in the Remaining Defendants' motion

and supporting memoranda that would lead the Court to change its prior ruling on the issue of

official immunity.  The Remaining Defendants' motion is denied in this regard.

> 2.     *Failure to state a claim - abuse of process, malicious prosecution, malicious
> trespass of property, negligent infliction of emotional distress, and
> intentional infliction of emotional distress*

The Remaining Defendants also argue Plaintiff has failed to state a claim with regard to

the claims of abuse of process and malicious prosecution (Counts VII and VIII).  Under Missouri

law, the torts of abuse of process and malicious prosecution both require the initiation of legal

proceedings against the plaintiff by the defendant.  See Trustees of Clayton Ter. Subdiv. v. 6

Clayton Ter., LLC, 585 S.W.3d 269, 277 (Mo. 2019) (en banc), reh'g denied (Nov. 19, 2019)

(elements of abuse of process); State ex rel. Police Ret. Sys. of St. Louis v. Mummert, 875 S.W.2d

553, 555 (Mo. 1994) (en banc) (elements of malicious prosecution).  The Third Amended

Complaint does not allege that the Remaining Defendants initiated or participated in initiating

legal proceedings against Plaintiff, that Plaintiff was ever formally charged with a crime, or that

these defendants actually participated in issuing the summons.  This Court agrees with the other

judges in this District who found similar allegations insufficient to state a claim for abuse of

process or malicious prosecution. See Street, 2021 WL 677909 at *10 (dismissing abuse of process

and malicious prosecution claims where, "[a]lthough plaintiffs allege that every defendant

'assisted in the filing of charges against plaintiffs,' the factual allegations do not show that

defendants' interactions with plaintiffs went beyond their arrests."); Robertson, 2021 WL

4459728, at *11 (same); Laird, 2021 WL 4459705, at *10 (same); Davis, 2021 WL 4148331, at

*10 (same); <u>Nelson</u>, 2021 WL 4399481, at *11 (same); <u>Ortega</u>, 2021 WL 3286703, at *18 (same). Therefore, the Court dismisses Counts VII and VIII.

Plaintiff also fails to state a claim for malicious trespass of property because Plaintiff does not identify which Defendant damaged his iPhone, and instead asserts that "Defendants" in general maliciously or wantonly damaged his iPhone. (ECF No. 114 at 58). These allegations are insufficient to support a claim against any of the Remaining Defendants. Therefore, the Court will dismiss Count XV. <u>See</u> <u>Street</u>, 2021 WL 677909, at *11 (dismissing conversion claims where the plaintiffs asserted that property was taken by officers but did not identify which officers participated in the conversion); <u>Laird</u>, 2021 WL 4459705, at *10 (same).

The Court also finds, as it previously held, that the intentional infliction of emotional distress claim may proceed at this stage under Federal Rule of Civil Procedure 8(d)(3) as a claim pled in the alternative, and that the claim for negligent infliction of emotional distress is not duplicative of the assault or battery claims. (ECF No. 44 at 14-15). <u>See also</u> <u>Robertson</u>, 2021 WL 4459728, at *11; <u>Laird</u>, 2021 WL 4459705, at *12; <u>Ortega</u>, 2021 WL 3286703, at *18; <u>Street</u>, 2021 WL 677909, at *11. Therefore, the Court will deny the Remaining Defendants' motion to dismiss these claims.

### 3. *Vicarious liability under the City Charter*

In Count XI, Plaintiff alleges Defendants O'Toole and Deeken are vicariously liable under the City's Charter because Article VIII, Section 5 of the Charter states, "Each head of a department, office or division shall be responsible for the acts or omissions of officers and employees appointed by him, and may require bonds or other securities from them to secure himself." (ECF No. 114 at 53). Plaintiff alleges that O'Toole and Deeken were officers and employees of the Chief of Police and were acting in the scope of their employment when they committed the acts alleged.

The Court agrees with the other judges in this District who have declined supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(c)(1).  See Robertson, 2021 WL 4459728, at *12; Laird, 2021 WL 4459705, at *12; Nelson, 2021 WL 4399481, at *11; Davis, 2021 WL 4148331, at *11; Ortega, 2021 WL 328670, at *19; Street, 2021 WL 677909, at *13.  This Court declines to exercise supplemental jurisdiction over Count XI because the claim raises "complex and unsettled questions of state law preemption over obscure municipal ordinances," and such novel issues of state law should be first addressed by the state courts.  Street, 2021 WL 677909, at *13.

### V.    Conclusion

For the reasons set out above, the Supervisor Officers in Paragraph 17, against whom no specific allegations were made, are dismissed from this action without prejudice.  Plaintiffs' state-law abuse of process, malicious prosecution, and malicious trespass of property (Counts VII, VIII, and XV) are dismissed with prejudice for failure to state a claim.  Finally, the Court declines to exercise supplemental jurisdiction over Count XI, which is the only claim asserted against Defendant Deeken.  Count XI and Defendant Deeken are dismissed without prejudice.

Accordingly

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part as set forth herein: (1) All defendants except for the City of St. Louis and individual defendants O'Toole, Leyshock, Sachs, Howard, Rossomanno, Jemerson, Boyher, Karnowski, Kiphart, Burle, and Gaddis are **DISMISSED** from this action without prejudice; (2) Counts VII, VIII, and XV are **DISMISSED** in their entirety, with prejudice; (4) supplemental jurisdiction under 28 U.S.C. § 1367 over Count XI is denied and Count XI is **DISMISSED** without prejudice.  In all other respects, the Motion to Dismiss is **DENIED**.  (ECF No. 117)

29

An order of partial dismissal will accompany this Memorandum and Order.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this <u>30th</u> day of September, 2021.

30